COMMONWEALTH vs. WILLIAM L. FILLIPPINI & another.[1]

Plymouth.    May 24, 1973. — December 14, 1973.

Present: ROSE, KEVILLE, & ARMSTRONG, JJ.

*Witness,* Psychiatric examination. *Practice, Criminal,* Psychiatric examination, Judicial discretion, New trial. *Evidence,* Relevancy and materiality, Judicial discretion, Footprints. *Assault. Accessory.*

No abuse of discretion appeared in a criminal case in that a motion by a defendant for a psychiatric examination of the chief prosecution witness under G. L. c. 123, § 99, was denied without an examination of the witness by the judge. [608-610]

At the trial of indictments arising from an armed robbery of a store, where the store manager testified that the robber had worn "pointed toe" shoes with an "odd-shaped heel," there was no error in the admission of subsequent testimony by a police officer that he observed footprints of the "pointed shoe type," with a distinguishing heel mark, in the immediate vicinity of an abandoned getaway car and near a defendant's home. [610-612]

At the trial of an indictment against two defendants for assault with intent to murder upon the manager of a store, evidence that during an armed robbery of the store perpetrated by one of the defendants he committed such an assault upon the manager with a pistol, that the second defendant was the owner of the pistol, that he was present in the store during the robbery, and that he had participated in planning the robbery and had arranged with the robber defendant that if the store manager reached for a gun he, the second defendant, would signal the robber and the robber would shoot the manager warranted findings that the second defendant was an accessory before the fact to the assault and was guilty as charged in the indictment. [612-613]

Following verdicts of guilty against two defendants on charges arising from an armed robbery of a store, there was no abuse of discretion in denial of motions by them for a new trial based on an affidavit stating that the affiant, rather than one of the defendants, had been the actual robber, that a certain person, rather than the other defendant, had been the robber's accomplice, and that certain witnesses had committed perjury at the trial. [613-614]

[1] Ralph Andrews.

INDICTMENTS found and returned in the Superior Court on October 1, 1968.

A motion by the defendant Fillippini for a psychiatric examination of a witness was denied by *Spring, J.* The cases were tried before *Taveira, J.*

*Daniel F. Toomey* for the defendant Fillippini.

*John J. Perenyi* for the defendant Andrews.

*A. Stanley Littlefield,* District Attorney, & *John C. Webster, III,* Assistant District Attorney, for the Commonwealth.

ROSE, J.   The defendants were separately indicted for armed robbery while masked and for assault with intent to murder, tried under the provisions of G. L. c. 278, §§ 33A-33G, and convicted by a jury on each indictment. They have assigned the following as error: by Fillippini, the denial of his motion for a psychiatric examination of a prosecution witness; by both defendants, the admission of testimony concerning footprints found in the vicinity of the robber's escape vehicle and near Fillippini's home; by Andrews, the denial of a motion to strike the footprint testimony and the trial judge's refusal to direct a verdict on his indictment for assault; and finally, by both defendants, the denial of their motions for a new trial. Fillippini also assigned as error the denial of his motion for a severance, but the assignment was not argued in his brief and we do not consider it here. Appeals Court Rule 1:13.

The evidence admitted at trial tended to show the following: Andrews, accompanied by a woman named Kathy Perry, entered a store in Plymouth on the morning of March 26, 1968, and sought to purchase cigarettes. His car was left parked outside the store entrance with its engine running. Shortly thereafter, a masked man armed with a pistol entered the store and announced a holdup. The gunman ordered Andrews to open the cash register, but the register jammed when Andrews pressed its keys. The gunman fired two shots, one above and to the left of Richard Irving, the store manager, and the second across the counter in front of him. The gunman then ordered Irving to open the safe, threatening to kill a child in the

store if Irving refused. He also briefly held his pistol to Irving's head. The robber then ordered Andrews to put the contents of the safe into a bag and Andrews did so. The robber drove off with the money in Andrews' car, which was later found abandoned. After the gunman left, Andrews argued with Irving over who would notify the police and repeatedly pushed the store manager away from a telephone. Irving then ordered him away from the store counter and summoned assistance. Andrews remained in the store until the police arrived, responded, with Irving, to their questions and then accompanied Perry, who had left the store briefly and returned, to his apartment. A money sack identified as the one used in the robbery was subsequently discovered in Fillippini's house.

1. The chief prosecution witness at the defendants' trial was Kathy Perry, who testified that she was friendly with both defendants and with one James Pina and had been present on several occasions while the three men planned the March 26 robbery. Perry was present in the store during the holdup and stated that she recognized the gunman's voice as that of Louis Fillippini. She also claimed to have been present when the two defendants divided the proceeds of the crime.

Neither defendant challenged Perry's competency at trial, but both filed pre-trial motions requesting that she be given a psychiatric examination under G. L. c. 123, § 99.[2] Fillippini's motion was accompanied by his attorney's affidavit, which reported information to the effect that Kathy Perry was a "pathological" liar.[3] The affidavit cited no evidence supporting this conclusion, although in ar-

---

[2] Section 99 read in pertinent part as follows: "In order to determine the mental condition of any person coming before any court of the commonwealth, the presiding judge may, in his discretion, request the department to assign a member of the medical staff of a state hospital to make such examinations as he may deem necessary." See now G. L. c. 123, § 19, as appearing in St. 1970, c. 888, § 4.

[3] The affidavit also alleged that Perry harbored "deep personal resentment" against Fillippini. This allegation, if proved, would go to the credibility of the witness rather than to her competence and would be for the jury to consider. Kane v. Learned, 117 Mass. 190, 194 (1875).

guing the motion Fillippini's attorney did state that Perry had been hospitalized three times for "mental reasons." The motion was denied without comment, and the defendant excepted. Fillippini argues on appeal that the motion judge abused his discretion in refusing to grant the motion in the face of "compelling information" presented to the court and in failing to make a personal inquiry of the challenged witness before issuing his ruling. We consider the latter argument first.

The defendant correctly characterizes the issue here as one of discretion. Both the wording of the statute and the decisions interpreting it establish that the judge's decision whether to order a psychiatric examination is a purely discretionary one. *Commonwealth* v. *Welcome,* 348 Mass. 68, 69 (1964). *Richardson* v. *Commonwealth,* 355 Mass. 112, 116 (1969). Fillippini argues, however, that the presiding judge was required by Massachusetts law to observe or "scrutinize" the witness before denying his request that she be examined. In evaluating the defendant's argument, it should be recalled that the psychiatric examination authorized by § 99 is not itself determinative of any issue. It is intended only as a supplement to the more traditional methods of assessing the competency of witnesses, such as the voir dire. It seems to us farfetched to argue that a judge's decision whether or not to employ this wholly discretionary procedure is bounded by a rigid procedural constraint, that he must, in every case in which a psychiatric examination is requested, personally examine the witness. The language of § 99 supports no such interpretation and, despite the defendant's arguments to the contrary, we do not understand the case law to require it. In *Commonwealth* v. *Theberge,* 330 Mass. 520, 527 (1953), cited by Fillippini, the court did observe that the judge who denied the motion "had already formed the opinion that. . . [the witness] possessed sufficient ability to testify." This passage calls attention to the probable basis for the court's ruling but cannot fairly be read to require any particular method of making it. In the *Theberge* case the motion for a psychiatric examination was decided together

with other motions relating to competency, and the trial judge was able to consider it in the light of information developed through voir dire. Fillippini, however, chose to request an examination well in advance of trial and submitted his motion on affidavits alone. He did not request a voir dire at that time and cannot now claim that the *Theberge* case required the motion judge to go beyond the evidence submitted and to conduct a voir dire.

A second decision relied upon by the defendant, *Commonwealth* v. *Welcome, supra,* is of no greater assistance to his argument. In that case, too, the court noted that the trial judge observed the witness in question. But other language in the opinion suggests that a judge may reject a psychiatric examination in favor of more traditional methods of determining competency in order "to lighten the impact of the proceedings" on the witnesses. *Commonwealth* v. *Welcome, supra,* at 69. There is no indication that the refusal to grant a psychiatric examination must be based in every instance on a prior inquiry of the witness.

Also we find no abuse of discretion in denying the motion on the basis of the indefinite supporting information which we do not find to be "compelling" in the absence of documentation or other specific evidence to support it.

We note finally that at the trial the defendants were permitted to cross-examine Kathy Perry as to her medical history, her previous criminal record and her reputation for veracity. It was therefore open to the jury to consider all these matters as they bore on the credibility of her testimony.

2. Both defendants took exception to the admission of testimony concerning footprints found in the vicinity of the abandoned escape car and near Fillippini's home, and Andrews further excepted to the denial of his motion to strike this testimony. The evidence in question was presented by a police officer, who stated that he had observed footprints of the "pointed shoe type" with a distinguishing heel mark in the immediate area of the empty getaway car. On cross-examination, the prints were described as beginning approximately ten yards from the

vehicle. About four hours after making these observations the officer returned to the car and at that time noticed the same type of footprint farther along the road. These marks ended halfway down an embankment near Fillippini's house. Earlier in the trial, the store manager, Richard Irving, had testified without objection that the man who robbed him had worn "pointed toe" shoes with an "odd-shaped heel."

The defendants argue that the police officer's testimony should not have been admitted because it lacked relevancy and prejudiced their defense. It is a familiar tenet of Massachusetts law that the "relevancy of testimony depends upon the question, whether it has a rational tendency to prove the issues made by the pleadings or other incidental material issues developed in the course of the trial." *Commonwealth* v. *Durkin,* 257 Mass. 426, 427-428 (1926). *Commonwealth* v. *Ross,* 361 Mass. 665, 679 (1972). "Because of the wide variety of facts that may have circumstantial probative value, the courts are liberal in admitting evidence of facts which appear to bear some degree of relevance to the matters in issue. Much discretion is left to the trial judge, and his rulings will be sustained if the evidence which is admitted tends even somewhat remotely to show that a fact in controversy did or did not exist." Torcia, Wharton's Criminal Evidence (13th ed.) § 155. See, e.g., *Commonwealth* v. *Richmond,* 207 Mass. 240, 245 (1911); *Commonwealth* v. *Moore,* 323 Mass. 70, 74 (1948); *Commonwealth* v. *Dougherty,* 343 Mass. 299, 306-307 (1961); *Commonwealth* v. *D'Ambra,* 357 Mass. 260, 263-264 (1970). In light of the store manager's prior testimony that the robber wore shoes with oddly shaped heels, the police officer's later testimony was clearly relevant in establishing the robber's escape route and in linking Fillippini with the crime.

The probative value of any testimony must of course be weighed against the prejudicial effect which it may have on the minds of the jurors. The defendants believe that the footprint evidence had a gravely prejudicial impact upon this case, leading the jury into "speculation, guess and

surmise." Insofar as they are not merely reiterating their claim that the evidence lacked relevance, the defendants appear to be arguing that the jury accorded the officer's testimony undue weight. Even if the evidence had this effect, it would not be "prejudicial" as that word is usually defined. See Hughes, Evidence § 284.

We believe, in any event, that the jury was capable of appreciating the uncertainties inherent in the footprint testimony, especially in light of the trial judge's character- ization of it as "a circumstance" to be considered "for whatever value it may have in the establishment of the Commonwealth's case" and the jury's own observation of the area in which the prints were found.

3. Andrews also assigns as error the denial of his motion for a directed verdict on the charge of assault with intent to murder. The sole question raised by such a motion is "whether there was sufficient evidence of the defendant's guilt to warrant the submission of the [case] to a jury." *Commonwealth* v. *Baron,* 356 Mass. 362, 365 (1969). Andrews' argument on this point is premised on the absence of evidence that he ever directly threatened his alleged victim, Richard Irving. This contention ignores G. L. c. 274, § 2 (as amended by St. 1968, c. 206, § 1)[4], under which Andrews could be convicted as a principal if he acted as an accessory before the fact to a crime committed by another.

There was abundant evidence that Irving was assaulted by the robber. According to Andrews' own testimony, the masked gunman threatened to kill everyone in the store, fired his pistol twice, and then pointed his gun at the manager's head. As regards the responsibility of acces- sories, the applicable standard is as follows: "[G]uilt of the accessory is established when it is . . . shown that he in-

---

[4] The 1968 amendment to c. 274, § 2, took effect on April 30, after the assault was committed but before Andrews was indicted for his participation in it. Andrews, however, does not argue that the intervening amendment affected the legality of his indictment and we are of the opinion that any such argument would be without merit. See the discussion in *Commonwealth* v. *Benjamin,* 358 Mass. 672, 679-681 (1971).

tentionally assisted the principal in the commission of the crime and that he did this, sharing with the principal the mental state required for that crime." *Commonwealth* v. *Richards,* 363 Mass. 299, 307 (1973). The defendant in that case, like the defendant here, was indicted for assault with intent to murder in connection with a store robbery. On the issue of intent, the court observed that "it would suffice if the purpose to murder in the mind of the accessory was a conditional or contingent one, a willingness to see the shooting take place should it become necessary to effectuate the robbery or make good an escape." *Ibid.*

In this case there was testimony that Andrews owned the weapon used in the assault and that he agreed in advance to signal Fillippini if the store manager reached for a gun, in which event Fillippini would shoot him. This evidence, taken with testimony that Andrews remained an active participant in the robbery conspiracy, was sufficient for the jury to find that Andrews was an accessory to Fillippini's assault and was content to see Irving killed if necessary to effectuate the robbery. It was not error to deny Andrews' motion for a directed verdict.

4. The defendants' final assignments of error concern the denial of their companion motions for a new trial based upon the affidavit of one James J. Pina. The affiant prepared his statement while incarcerated for an unrelated crime; in it he claimed that he, not Fillippini, was the masked gunman who carried out the March 26 robbery and that Kathy Perry rather than Andrews was his accomplice. Pina further charged that Perry, Richard Irving and several members of the Plymouth police force committed perjury at the defendants' trial. The trial judge denied the motions after conducting a hearing at which Pina was a witness.

The trial judge was not required to accept as true the statements made in Pina's affidavit or his testimony at the hearing. Pina's credibility was a preliminary matter for decision by the trial judge and his decision thereon is final. *Commonwealth* v. *Bernier,* 359 Mass. 13, 16 (1971). The short answer to the defendants' contention that Pina's statement is inherently reliable, since it includes details

which could only be known to the perpetrator of the crime and other facts which were corroborated at the trial, is that matters which appear nowhere but in the affidavit might have been fabricated by Pina, while those facts testified to at the trial were matters of public knowledge when Pina prepared his affidavit.

The disposition of motions for a new trial on the ground of newly discovered evidence rests within the sound discretion of the trial judge. *Commonwealth* v. *Chin Kee,* 283 Mass. 248, 256-257 (1933). *Commonwealth* v. *Wallace,* 304 Mass. 680 (1939). *Commonwealth* v. *Robertson,* 357 Mass. 559, 562 (1970). The denial of the defendants' motions in these circumstances was not an abuse of discretion.

*Judgments affirmed.*