COMMONWEALTH *vs.* WILLIAM L. FILLIPPINI & another.[1]

Plymouth.    November 19, 1973. — April 23, 1974.

Present: ROSE, KEVILLE, & GRANT, JJ.

*Constitutional Law,* Assistance of counsel, Waiver of constitutional rights. *Practice, Criminal,* Mistrial. *Evidence,* Of another crime, On cross-examination. *Identification. Witness,* Psychiatric examination.

The facts warranted a conclusion that there was a knowing and intelligent waiver of counsel by a defendant at an armed robbery trial for whom the judge had repeatedly offered to provide a public defender and who had recently been tried and convicted of a like offense. [182-184]

A motion for a mistrial by a defendant at an armed robbery trial should have been allowed by reason of questions asked by codefendants in cross-examination of a principal witness for the Commonwealth informing the jury that the moving defendant had previously been convicted, on the testimony of the same witness,

---

[1] Ralph Andrews.

of a similar crime perpetrated jointly with one of the present codefendants. [185-187]

Evidence in a criminal case did not show that the circumstances of an out-of-court identification of a defendant as a participant in the crime by a witness from a photograph on the last of four occasions when she was shown groups of photographs by the police were "impermissibly suggestive" as claimed by the defendant. [187-188]

No abuse of discretion was shown in denial of a motion by a defendant, considered by the judge at the outset of a second trial of an indictment, for a psychiatric examination of a principal witness for the Commonwealth whom the judge had observed at the first trial. [188-189]

No abuse of discretion was shown in a ruling by the judge at a criminal trial barring further cross-examination of a principal witness for the Commonwealth as to her psychiatric background after the judge had permitted substantial interrogation of her on that subject. [189]

INDICTMENT found and returned in the Superior Court on October 1, 1968.

Both trials of the case were before *Hudson, J.*

*Kay Hodge* for the defendant Fillippini.

*Charles P. Dattola & Henry F. Owens, III (Anne Hoffman* with them) for the defendant Andrews.

*David G. Nagle, Jr.,* Assistant District Attorney, for the Commonwealth.

ROSE, J. William Fillippini, Ralph Andrews, and James, John, and Arthur Pina were charged in a single indictment with armed robbery while masked. On the third day of a first trial the judge declared a mistrial as to each defendant. At a second trial of the indictment, under G. L. c. 278, §§ 33A-33G, Andrews, Fillippini, and James Pina were convicted, but the jury were unable to reach a verdict concerning John or Arthur Pina. Only the assignments of error by Fillippini and by Andrews are presently before this court. Fillippini assigns as error the judge's permitting him to proceed to trial without counsel and the denial of his motion for a psychiatric examination of a prosecution witness. Andrews assigns as error the

denial of his motion for a mistrial,[2] the admission of an in-court identification of Fillippini by a witness to the robbery, the denial of Andrews' motion for psychiatric examination of a prosecution witness (the same witness as the one to whom Fillippini's motion for a psychiatric examination related, but founded on grounds different from those on which Fillippini's motion was based), and the judge's decision to limit Andrews' cross-examination of that witness. Discussion of Andrews' other assignments of error is unnecessary in light of the view we take of his case.

The evidence was, in part, as follows. On the morning of March 21, 1968, two armed men wearing stocking masks robbed the Rockland Trust Company in Hanson. At approximately the time of the robbery a bystander saw a man (later identified as Fillippini) leave the bank while carrying a bag and adjusting a garment around his neck. The man entered an automobile driven by another man wearing a ski mask and was driven away at a high rate of speed. One Kathy Perry Ducote testified concerning conversations at which the defendants had been present or in which they had participated and in the course of which the March 21 robbery had been planned. Ducote also testified that on March 20 she had accompanied Andrews and James Pina on a trip to Boston. Another witness, who lived in Boston near where Andrews and Pina had parked their automobile on the March 20 trip, testified that the license plates had been stolen from her automobile on that date. The stolen license plates were later observed on the car in which Fillippini left the bank at the time of the robbery. Ducote further testified that she had been present at Andrews' apartment on the afternoon of March 21, that she had heard the five defendants discuss their roles in the robbery committed that morning, and that she had

[2] This motion had no connection with the motion for a mistrial granted at Andrews' first trial.

seen each of them take portions of a large amount of currency which was lying on the floor.

## FILLIPPINI

1. At the start of his second trial Fillippini executed a written waiver of counsel. Thereafter, he conducted his defense without the assistance of an attorney. Fillippini now contends that his rights under the Sixth and Fourteenth Amendments to the Constitution of the United States were violated because his waiver was not intelligently and knowingly executed. See *Johnson* v. *Zerbst,* 304 U. S. 458, 464-465 (1938); *Moore* v. *Michigan,* 355 U. S. 155, 161 (1957); *Carnley* v. *Cochran,* 369 U. S. 506, 516 (1962). Arguing by analogy from the case of *Von Moltke* v. *Gillies,* 332 U. S. 708 (1948), Fillippini states that his waiver cannot be treated as valid in the absence of a showing that it was made "with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Id.* at 724.

The *Von Moltke* case involved what may be a different situation from that presented by the case at bar, namely a defendant's decision to waive counsel and enter a plea of guilty rather than as here proceed to trial without counsel. The decision has been interpreted by other courts not to require a judge "literally [to] fulfill all elements of a formula describing his responsibilities for acceptance of waiver of counsel. Substance rather than form is the guiding criterion for reviewing courts." *Spanbauer* v. *Burke,* 374 F. 2d 67, 74 (7th Cir. 1966), cert. den. 389 U. S. 861 (1967), and cases cited. See *Arnold* v. *United States,* 414 F. 2d 1056, 1058 (9th Cir. 1969), cert. den. 396 U. S. 1021 (1970). If the *Von Moltke* case does apply in a situation such as is presented by the case

at bar, we are of the opinion that its substance was fulfilled.

Fillippini had reason to know of the nature and seriousness of the indictment against him, as he had been tried and convicted of armed robbery while masked in November, 1968, less than six months before his trial in the case at bar.[3]  As in the present case, Fillippini had been tried with a codefendant and convicted primarily on the strength of Ducote's testimony.  In that case he had been sentenced to ten to fifteen years at the Massachusetts Correctional Institution at Walpole.

There is little doubt that Fillippini understood the importance of having the assistance of counsel in his defense.  He had been represented by an attorney at his 1968 trial and had retained a lawyer to represent him in the case at bar.  Fillippini discharged that attorney on April 18, 1969, asserting that he was in collusion with the prosecution.  Fillippini thereafter insisted that he would retain private counsel and rebuffed the judge's efforts to explain the importance of legal assistance, at one time exclaiming, "I know how important it is."  That Fillippini never retained an attorney appears to have been due either to his inability to pay a fee (it should be noted that the judge questioned Fillippini at least twice concerning his financial resources and, as noted below, repeatedly offered to appoint a public defender to represent him) or to his mistaken belief that by refusing counsel he could delay the trial (at one point he said to the judge, "You won't try me without a lawyer").

Our review of the transcript reveals that the judge offered to appoint a public defender to represent Fillippini on seven or more separate occasions, twice emphasizing the experience and competence of such counsel.

---

[3] The circumstances of Fillippini's earlier trial (which is not to be confused with the mistrial declared in the present case) are set forth more fully in the opinion in *Commonwealth* v. *Fillippini,* 1 Mass. App. Ct. 606 (1973).

Fillippini agreed once to accept the judge's offer, for purposes of jury selection at the trial which resulted in a mistrial, but immediately thereafter refused to coöperate with the attorney appointed to assist him. Fillippini now argues that the judge should have informed him that under "exceptional circumstances" a private attorney could be appointed to represent him.[4] Fillippini does not suggest, however, what exceptional circumstances might have been present in his case or that the judge had any cause to inquire as to their possible existence. We conclude that Fillippini's waiver was knowingly and intelligently executed.

2. Fillippini also assigns as error the denial of his motion for a psychiatric examination of Ducote. The motion in question was filed in connection with a number of separate indictments then pending against him and had been heard and denied on October 28, 1968. Certain of the indictments were tried separately, and the judge's ruling on this very motion was reviewed in our opinion in *Commonwealth* v. *Fillippini*, 1 Mass. App. Ct. 606, 608-610 (1973). It would serve no useful purpose to restate our reasons for upholding the judge's decision.

---

[4] This argument is not constitutional in nature but is based upon S.J.C. Rule 3:10, 351 Mass. 791 (1967), which was amended effective April 10, 1969, in part by the addition of the following paragraph: "An attorney supplied by the Massachusetts Defenders Committee (G. L. c. 221, § 34D, as amended), or by a voluntary charitable group, corporation, or association, or one serving without charge, shall be appointed under this rule to represent an indigent defendant unless *exceptional circumstances, for example a conflict of interest, or the need of counsel speaking a foreign language,* justify another appointment. If a judge shall find the appointment of another attorney is justified, he shall record in writing, to be filed with the clerk and placed with the papers in the case, a statement of his reasons" (emphasis supplied). 355 Mass. 803 (1969).

ANDREWS

3. Andrews has assigned as error the denial of his motion to sever or, in the alternative, to declare a mistrial. A motion to sever was originally heard on April 18, 1969, and was renewed on May 12. That motion was again pressed during the cross-examination of Ducote by James Pina and Fillippini and, on the last occasion, was accompanied by a motion for mistrial. In each instance the particular motion was denied by the judge. In the course of the trial James Pina and Fillippini, both of whom proceeded pro se, repeatedly asked questions of Ducote which implicated Andrews in a prior crime. There exists a substantial doubt that the jury were able to disregard this inadmissible and highly prejudicial evidence, and for that reason motion for a mistrial should have been granted.

The assertions in question were made in the course of cross-examination of Ducote by James Pina[5] and Fillip-

---

[5] JAMES PINA: "Isn't it true that I came into this courtroom and indeed, under a motion for a new trial, testified to the fact that you and I robbed Cumberland Farms of which two innocent men are convicted?"*

THE JUDGE: "I will exclude the question. The jury will disregard it. It's highly improper."

JAMES PINA: "Didn't you state in that letter there that Ralph [Andrews] and Louis [Fillippini] would be home soon? Why did you write that?"

THE WITNESS: "Because they will be."

JAMES PINA: "They will be home soon? You just sentenced them to jail for something they didn't do but they will be home soon?"

THE WITNESS: "If — yes, they will. It doesn't take that long for a parole."

*This appears to be a reference to the conviction of Andrews for armed robbery while masked which was upheld by this court in *Commonwealth* v. *Fillippini,* 1 Mass. App. Ct. 606 (1973).

pini[6], relevant portions of which are set forth in the margin. Proof of prior offenses is a "dangerous species of evidence" (*Commonwealth* v. *Shepard*, 1 Allen 575, 581 [1861]) which, by its nature, is "manifestly prejudicial" to a criminal defendant. *Commonwealth* v. *Hanley*, 337 Mass. 384, 394 (1958), cert. den. sub nom. *Hanley* v. *Massachusetts*, 358 U. S. 850 (1958). See *Commonwealth* v. *Welcome*, 348 Mass. 68, 70 (1964). Although it is often assumed that the jury will obey such limiting instructions as may be necessary (*Commonwealth* v. *Hanley, supra,* at 394-395; contrast *Commonwealth* v. *Banuchi,* 335 Mass. 649, 654 [1957]), particularly inflammatory matter is difficult for the jury to disregard. See *United States* v. *Rinaldi*, 301 F. 2d 576, 578 (2d Cir. 1962); *Thurman* v. *United States,* 316 F. 2d 205, 206 (9th Cir. 1963); *Maestas* v. *United States,* 341 F. 2d 493, 496 (10th Cir. 1965); *Odom* v. *United States,* 377 F. 2d 853, 859-860 (5th Cir. 1967); *United States* v. *Rudolph,* 403 F. 2d 805, 806 (6th Cir. 1968); *State* v. *Stago,* 82 Ariz. 285, 287 (1957); *Raifsnider* v. *State,* 146 Texas Crim. App. 578, 580-581 (1944).

---

JAMES PINA:   "Wasn't it a fact that you were going in there and telling the truth about the Cumberland Farm robbery?   Until I went and testified and told the truth."

THE WITNESS:   "I already told the truth."

THE JUDGE:   "Please, please, I have already admonished you that the Cumberland Farm robbery has nothing whatsoever to do with this case, at the present time at least, and there is no foundation or grounds for you putting any such question.   The jury will disregard it."

[6] FILLIPPINI:   "Mrs. Perry [Ducote], isn't it a fact that you lied and put me and Ralphie [Andrews] in jail before?"

COUNSEL FOR ANDREWS:   "Your Honor —

THE JUDGE:   "I will exclude it."

From this cross-examination the jury were informed that Andrews had already been imprisoned for an offense similar to that for which he was then being tried; that that crime had been carried out jointly with Fillippini, who was one of the codefendants then on trial; and, finally, that Andrews had already been "sentenced . . . to jail" on the testimony of Ducote, the witness whose credibility was the major factual issue raised by all defendants in the case at bar.

The judge in each instance promptly excluded the objectionable material and on two occasions told the jury to disregard it, but he gave the jury no explanation at the time of his rulings, nor did he give any curative instructions in the course of his charge. Consequently, we are unable to say with assurance that the jury did not consider Andrews' prior criminal record in arriving at their verdict. In *Commonwealth* v. *Welcome,* 348 Mass. 68 (1964), the Supreme Judicial Court reversed a finding of guilty, made by a judge sitting without jury, on the ground that evidence of the defendant's prior criminal activity had been improperly admitted. The court commented as follows: "It is very possible that the finding made by the judge was not at all affected by what he heard of the defendant's previous difficulties. We can only speculate upon the effect of that evidence. We are not in a position to say that it had none and such doubts as we entertain can only be resolved in favor of the defendant." *Id.* at 70. See also *Commonwealth* v. *Stone,* 321 Mass. 471, 474 (1947).

We turn now to such of the other exceptions saved by Andrews as concern matters likely to arise upon a retrial of his case.

4. Andrews excepted to the denial of his motion to suppress an in-court identification of Fillippini made by a witness to the robbery. The witness had previously made an out-of-court identification of Fillippini from photographs given to her by the police, and it is Andrews' contention that the circumstances of the earlier identifi-

cation had been "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" at trial. See *Simmons* v. *United States,* 390 U.S. 377, 384 (1968). See also *Stovall* v. *Denno,* 388 U.S. 293, 301-302 (1967). Although we entertain serious doubts as to Andrews' standing to object to an identification made of his codefendant, we proceed to consider his exception for the reason that the jury may have regarded the challenged identification as corroborative of the testimony of Ducote.

The witness who identified Fillippini testified on voir dire that she had examined groups of photographs supplied to her on four occasions. The viewings had taken place in April, September, and November of 1968 and in January of 1969, at the witness' place of work, at her home, or in a police building. On each occasion the witness had been given a group of approximately twenty "snapshot size" photographs, some of which bore numbers. The witness believed that some of the photographs she had viewed in November, 1968, had also been shown to her in September but recalled no other repetitions. In January, 1969, the witness had identified a photograph of Fillippini as the man she had seen leaving the Rockland Trust Company at the time of the robbery. She had not marked the picture and had not seen it again. The witness was of the opinion that the picture she had identified had not been shown to her in any of the previous viewings. No other significant evidence was presented in support of the defendant's motion.

We are of the opinion that the evidence introduced was insufficient to establish impermissible suggestiveness in the out-of-court viewings. We therefore need not consider whether the witness' subsequent in-court identification of Fillippini was independently made. See *Simmons* v. *United States,* 390 U. S. 377, 384 (1968).

5. Andrews also assigns as error the judge's denial of his motion for a psychiatric examination of Ducote. The motion was last considered by the judge at the com-

mencement of the second trial of the present indictment. At that time the judge was able to draw upon his observations of Ducote's demeanor as a witness at the first trial of the indictment and upon evidence introduced concerning her mental condition. The judge knew that Ducote had a history of commitments to mental institutions. He noted, however, that she had testified for at least three hours and had given the appearance of being "an extremely alert, intelligent girl of normal mentality." We do not believe that the judge abused his discretion in refusing to order the requested examination. *Richardson* v. *Commonwealth,* 355 Mass. 112, 116 (1969). *Commonwealth* v. *Fillippini,* 1 Mass. App. Ct. 606, 608-610 (1973).

6. Andrews also assigns as error the judge's decision to limit his cross-examination of Ducote concerning her psychiatric history. It is settled that "a witness may be cross-examined in the discretion of the judge to test his accuracy, veracity or credibility, . . . and for this purpose . . . his mental idiosyncracies, if they affect his capacity . . . may . . . be relevant." *Commonwealth* v. *Nassar,* 351 Mass. 37, 48 (1966). In this instance Andrews was allowed to question Ducote concerning her admissions to the Taunton State Hospital (a mental institution); her efforts, on one occasion, to gain admittance to the hospital; and the assistance rendered to her in that regard by the district attorney's office. Having permitted substantial interrogation of the witness concerning her psychiatric background, we cannot say that the judge abused his discretion in barring further cross-examination on the subject.

The judgment in the case of William Fillippini is affirmed. The judgment in the case of Ralph Andrews is reversed, and the verdict of the jury is set aside.

*So ordered.*