William L. FILLIPPINI, Petitioner,
Appellant,

v.

Theodore RISTAINO et al.,
Respondents, Appellees.

No. 78–1149.

United States Court of Appeals,
First Circuit.

Argued Sept. 13, 1978.

Decided Nov. 7, 1978.

Richard K. Latimer, Boston, Mass., by appointment of court, with whom Owens & Associates, Boston, Mass., was on brief, for petitioner, appellant.

Robert S. Potters, Asst. Atty. Gen., Crim. Div., Wellesley, Mass., with whom Francis X. Bellotti, Atty. Gen., and Stephen R. Delinsky, Asst. Atty. Gen., Chief, Crim. Bureau, Boston, Mass., were on brief, for respondents, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Appellant filed a petition for a writ of habeas corpus presenting issues concerning his waiver of counsel at his state court trial[1] and an eyewitness's in-court identification. The district court dismissed the petition holding that some aspects of the Sixth Amendment claims had not been exhausted before the state courts, 28 U.S.C. § 2254(b); *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); that the remaining aspect failed to state a claim on which relief could be granted; and that allowing the in-court identification was not an error of constitutional dimension.

 The Sixth Amendment claims may be broken down into four allegations: (1) that the trial judge should have inquired into appellant's mental competence to waive his right to counsel; (2) that the judge should have inquired into the reasons for appellant's dismissal of his original trial counsel; (3) that the judge should have inquired into whether the waiver was intelligent, effective, and voluntary; and (4) that the waiver was not in fact intelligent, effective, and voluntary. Of these the district court ruled that only the third had been exhausted in the state courts. We can easily agree that appellant did not give the state courts "a fair opportunity to consider . . . and to correct" the first two claims. *Picard, supra,* 404 U.S. at 276, 92 S.Ct. at 513. Though the facts on which these two claims are grounded were before the state courts, the constitutional theories now relied on were never brought forward. *See id.* at 277, 92 S.Ct. 509. "[T]he substance of a federal habeas corpus claim must first be presented to the courts." *Id.* at 278, 92 S.Ct. at 513. The state concedes that the third issue was properly exhausted. If this were the only issue we would have trouble imagining what relief would be available even if we should decide there had not been an adequate inquiry. Therefore, we must first decide whether the fourth issue was adequately presented to the state

courts. If so then meaningful relief would be available should Fillippini prevail on his Sixth Amendment claims.

 We have reviewed appellant's brief to the Massachusetts Appeals Court and that court's opinion. *Commonwealth v. Fillippini,* 2 Mass.App. 179, 310 N.E.2d 147 (1974) (application for further review denied by the Supreme Judicial Court). As the Appeals Court said, appellant contended his constitutional rights "were violated because his waiver was not intelligently and knowingly executed." Indeed, appellant's brief to that court presented the issue "[w]hether the defendant was deprived of his rights to due process and effective assistance of counsel because he was forced to proceed pro se." To be sure, most of the discussion focussed on the adequacy of inquiry, but that issue is closely related. Appellant was trying to show that his waiver was not voluntary and intelligent because the court had failed to do all it should have before accepting the waiver. The two arguments are so closely linked, both factually and logically, that we cannot say the state court lacked a fair opportunity to consider either. Accordingly, we disagree with the district court on this point. We need not remand, however, because our examination of the merits of the claims shows that in fact an adequate inquiry was made and, therefore, the waiver was effective.

Appellant initially retained counsel. His counsel appeared and argued various motions. Four days before the case first came to trial appellant told the court that he wished to fire his attorney because he disagreed with a conclusion the attorney had drawn from some evidence. At that time appellant declined representation by his codefendants' counsel, advised the court that he would not accept appointed counsel, and said that he had $900 and wanted to hire one of two private attorneys.

On April 22, 1969, the case came on for trial. Appellant's initial counsel was granted permission to withdraw. Appellant had

---

1. Fillippini was convicted of armed robbery while masked. *See Commonwealth v. Fillippini,* 2 Mass.App. 179, 310 N.E.2d 147 (1974).

not secured counsel. The one attorney contacted would not take the case on such short notice. Appellant refused to sign a waiver of counsel. Nonetheless the court proceeded with jury selection. After appellant had protested five times that he knew nothing about law and wanted an attorney, the court again offered to appoint one. This time appellant accepted, and the court appointed an attorney then in the courtroom. Appellant, however, discharged this attorney after a brief conference. Thereafter appellant remained mute during the empanelment process. During the trial appellant refused to cross-examine and requested counsel. "I'd like to get counsel. Don't know nothing about cross examining. I only went to the fourth grade."

On April 24 the court declared a mistrial. The retrial was set for two to three weeks later. On April 28 the court brought Fillippini before it on the issue of counsel. The court learned from an attorney contacted on behalf of Fillippini that Fillippini did not have money available. The court recounted the history of the case and reminded appellant that he had repeatedly asked for counsel. Appellant again refused appointment of a public defender, and the court explained that it could not appoint a private attorney. Fillippini asserted that the money was available and that he had hired a lawyer, but he could not tell the court the lawyer's name or when the lawyer would file an appearance. As the court began to explain the importance of having a lawyer, Fillippini cut him off and said, "I know how important it is. You tried me one time without a lawyer, you ain't going to do it again." The court persisted, "Now, what I want to tell you again is you are entitled to have an attorney represent you at this trial. You are entitled to have an attorney as of now, and I am ready to appoint a public defender to represent you if you want one. Now, what is your pleasure?" Appellant again refused, saying "I don't want nothing from you or the state." He reiterated that he had an attorney who would be present when trial commenced and again refused a public defender. Finally the court told appellant "that the public defenders are experienced and men who have more-or-less made the criminal law their career" and "that they are trying cases in this court almost every day on the criminal side", but appellant was still unwilling to accept one.

On May 6, appellant told the court he would be represented by the same attorney representing his co-defendants. The next day that attorney denied that he had been retained by Fillippini or had filed an appearance for him. The court again advised appellant of his right to a public defender, and appellant again refused, saying he would go forward without a lawyer as before. It came out that another attorney had been contacted, but had not yet agreed to take the case. The court again offered appointed counsel and was turned down. Fillippini assured himself that the court would assist in bringing in witnesses and offered to sign a waiver. The court repeated his praise of the public defenders, but appellant turned them down once more. Appellant signed a waiver of counsel before the case came on for retrial May 12, 1969.

This case is controlled by the principles set down in *Maynard v. Meachum*, 545 F.2d 273 (1st Cir. 1976). There we said that a court reviewing a habeas petition cannot rely solely on the petitioner's affirmative acquiescence in the trial procedure. "[T]he question remains whether this acquiescence was competent, intelligent and voluntary." *Id.* at 277. We refused, however, to lay down specific warnings that must be given or to require a particular colloquy.

■ Here the fact of waiver appears on the record. We need not rely on appellant's silent acquiescence. Moreover, "the burden of proof rests upon [a habeas petitioner] to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel." *Id.* at 277–78, *quoting Johnson v. Zerbst*, 304 U.S. 458, 468–69, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Thus appellant faces significant obstacles.

■ [A]n effective waiver must be the product of a free and meaningful choice." 545 F.2d at 278. Here, though Fillippini might have preferred to secure counsel to

replace his original counsel, the record reveals that he was unable to. The court repeatedly explained that he could have an appointed public defender specially trained in handling criminal cases, experienced, and competent. Fillippini repeatedly refused in no uncertain terms. The court was under no obligation to postpone trial indefinitely while Fillippini continued his ineffective efforts to secure private counsel.[2] *See id.* at 278. In short, it was clearly appropriate to confront Fillippini with the choice of proceeding to trial on May 12, 1969, either with a public defender or *pro se* unless he could secure private counsel by that time. The deadlines were clearly communicated to Fillippini and gave him sufficient time to act.[3]

 Nor can Fillippini maintain that his choice was not understanding and intelligent—that it was not made "with eyes open". *Id.* at 279. *See Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948). Appellant interrupted the court's effort to explain the importance of counsel by assuring the court that he understood how important counsel would be. In the face of that assertion, supported by his efforts to obtain counsel, appellant can hardly argue in good faith that his waiver was not voluntary because the court did not explain the situation. In any case, "[t]he district court may properly consider, in addition to [Fillippini's] background, experience and conduct, . . . such factors as his involvement in previous criminal trials [and] his representation by counsel before trial." *Id.*, at 279 (citation omitted).

Fillippini had been tried on another unrelated charge of the same crime in November of 1968 and had been sentenced to ten to fifteen years. He had an attorney in that trial and initially retained an attorney for this one. *See Commonwealth v. Fillippini, supra,* 310 N.E.2d at 150. He made it clear that he was aware of the existence of technical rules and that presenting his defense was more than just telling his story by, for instance, asking the judge to help him summon witnesses. We can infer from his general awareness of his situation and from his experience with the criminal process that he had "a general appreciation of the seriousness of the charge and of the penalties he may be exposed to". 545 F.2d at 279. This is especially so since he had just gone through the mistrial. Appellant has failed to show by a preponderance of the evidence that his waiver of counsel was not made with knowledge and understanding. *Id.* The court did as much as was required of it under the circumstances.

 The district court correctly denied appellant's requested "expansions of the record". He sought information concerning conditions at the prison that allegedly made it difficult for him to contact potential counsel and records bearing on his intellectual capability. As to the first point, the record demonstrates that appellant's friends and family were the ones trying to find counsel. He was not involved in the search himself. One attorney who was contacted was able to visit appellant in the prison. Moreover, appellant never suggested to the trial court that his failure to secure counsel had anything to do with conditions at the prison. Such information would be irrelevant, and its admission would go contrary to the policies served by the exhaustion rule. Secondly, as we held above, appellant failed to exhaust his claim that there was an inadequate inquiry into his competence to waive counsel. Therefore, the material relative to his mental capacity would be irrelevant.

Appellant also claims that an in-court identification of him should have been excluded because it was tainted by a prior out-of-court photographic identification. The witness, who had been present at the robbery scene, was shown a spread of about

---

2. Moreover the court had information that Fillippini did not have the funds to hire a private attorney.

3. We need not decide whether the trial court acted properly in requiring Fillippini to appear at his first trial *pro se*. The period between April 24 when the mistrial was declared and May 12 when the retrial began was certainly sufficient time for his friends to secure an attorney.

20 pictures one month after the March 21, 1968, robbery. She failed to identify any of them. In September she was shown another 20 pictures and again failed to identify any. In November she viewed another spread of about 20 pictures including a few that had been in the September selection. Again she did not make any identifications. Finally she was shown at least 20 pictures in January, 1969, and identified a picture of Fillippini. She testified, and the magistrate found, that his picture had not been included in any of the prior spreads. There was no evidence that the photographs were shown to the witness in an improper manner or that the spreads were in any way defective. Appellant's claim is that we must conclude that his picture had in fact been included in the earlier spreads and that, therefore, the repeated showings were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

Appellant would have us base this conclusion on the fact that he was indicted and arraigned between the second and third showings so that it would have been illogical for his picture to have been omitted from the third and perhaps the second displays. We do not find these circumstances sufficient basis to overturn the magistrate's contrary finding which was based on the witness's unequivocal testimony that Fillippini's picture first appeared in the last spread.

Nor does the mere fact that she was shown several sets of photographs establish suggestiveness by itself. *United States v. Sheehan*, 583 F.2d 30, at 32 (1st Cir. 1978). There we rejected a similar claim where three displays were presented over a period of more than six months, and the last two both included a picture of the appellant. Since appellant has failed to show that the spreads were suggestive, we need not go on to inquire whether there are independent reasons to believe the in-court identification was reliable. *See Manson v.*

*Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

*Affirmed.*