**James Edward WILKS, Petitioner,**

v.

**Thomas ISRAEL et al., Respondents.**

No. 79-C-296.

United States District Court,
E. D. Wisconsin.

Oct. 10, 1979.

Richard L. Cates, State Public Defender by Melvin F. Greenberg, Asst. State Public Defender, Madison, Wis., for petitioner.

Bronson C. La Follette, Wis. Atty. Gen. by Edward S. Marion, Asst. Atty. Gen., Madison, Wis., for respondents.

### DECISION and ORDER

MYRON L. GORDON, District Judge.

This petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, is before me for decision on the merits. Mr. Wilks attacks his state conviction on three consti-tutional grounds, including denial of the right to counsel. For the following reasons, the petition will be dismissed.

## I. RIGHT TO COUNSEL

The controversy on this issue centers around Mr. Wilks' several attempts to fire his appointed attorney, Mr. Demet, and have another, unspecified attorney appointed to handle his case. On each such occasion, the trial judge informed the petitioner that his choice was between accepting the services of Mr. Demet or proceeding pro se, unless he could hire a private attorney, but that another lawyer would not be appointed. Mr. Wilks' response was that he could not pay a private attorney, that he did not want Mr. Demet to represent him, and that he could not represent himself.

The colloquy which I have just described occurred on three occasions: at the petitioner's arraignment and at two hearings on pretrial motions. At the second hearing, after Mr. Wilks stated that he did not wish Mr. Demet to represent him and that he wished to represent himself, the prosecutor informed him that he had a right to appointed counsel. Tr. at 6. The petitioner indicated that he wanted a court-appointed attorney other than Mr. Demet, but the trial judge told the petitioner that he had to choose between Mr. Demet and proceeding pro se. Tr. at 7–10. At the close of the hearing, after Mr. Wilks had given a series of negative responses to the assistant district attorney's questions regarding Mr. Wilks' ability to conduct his own defense, the trial judge addressed the following words to the petitioner:

"Think very seriously that you should have Mr. Demet at your side representing you at trial. It is very important. All right. You better go back and talk to him, Mr. Demet. All right." Tr. at 18–19.

At the commencement of trial three days later, Mr. Wilks answered "yes" when the trial judge asked whether he wanted Mr. Demet to represent him. Tr. at 19. In addition to the pretrial stage, Mr. Demet represented the petitioner during the

government's case-in-chief and through direct examination of the petitioner, who was called as the defense's first witness. However, after a recess, Mr. Demet attempted to question the petitioner further. Mr. Wilks twice stated: "You are not my lawyer." Tr. at 190–91.

Out of the presence of the jury, a prolonged interchange similar to the one I described above then occurred. The assistant district attorney asked the petitioner if he understood that he was charged with attempted murder, and that a conviction carried with it a possible maximum prison sentence of thirty years. Tr. at 194–95. The assistant district attorney also advised Mr. Wilks that attempted murder had lesser included offenses and that Mr. Demet could present evidence of these to the jury. Tr. at 195, 197–98. Mr. Wilks again stated that he did not know how to examine and cross-examine witnesses, or how to argue to a jury. He also stated that he had spent time in a mental institution on five separate occasions for "observation and treatment." Tr. at 199.

In response to further questioning, the petitioner stated that he wanted a court-appointed attorney, because he could not pay a private one, but that he did not want Mr. Demet. The court once again told him that he had to choose between Mr. Demet and self-representation. Mr. Wilks replied: "I do not wish to proceed as my own attorney. I want an attorney, but not him. That's all I am saying." Tr. at 201. Later, when the court asked if this meant that Mr. Wilks intended to proceed pro se, Mr. Wilks stated, "You're right." Tr. at 205. The court then asked Mr. Demet to remain in the courtroom, and he did so.

Now in charge of his own defense, Mr. Wilks refused to submit to cross-examination and declined to call any witnesses in his behalf. The assistant district attorney delivered his closing argument. The petitioner began a closing argument but was cut off when he attempted to read his life story to the jury. When the judge asked, "Why not let Mr. Demet make your final argument?", Mr. Wilks replied: "Oh no. I have seen enough already. The man is not qualified. I feel I can do just worse a job myself." Tr. at 226–27. Shortly thereafter, in the presence of the jury, the petitioner made the following statement when asked if he wished to proceed with closing argument:

"I have no knowledge whatsoever on how to proceed. I would like to request Federal counsel be appointed in this matter because I am not qualified to do it myself, and from the way things are going now, I don't stand a chance." Tr. at 231.

During the instruction conference, the petitioner again refused to allow Mr. Demet to conduct the defense, stating: "I don't want him. I told you, get me a Federal lawyer, everything will be all right." Tr. at 232. Beyond this, Mr. Wilks failed to participate in the instruction conference. Although the jury was not instructed as to lesser included offenses, Mr. Demet remarked, after the jury retired: "I . . . was prepared to offer testimony which would have resulted in a reduced or lesser charge being submitted." Tr. at 236–37.

The jury returned a verdict of guilty to the charge of attempted murder. During the second stage of the trial, where the issue was the petitioner's mental condition on the date of the offense, Mr. Demet conducted the defense. The jury found that the petitioner was not suffering from a mental defect, and the court entered a judgment of conviction. Tr. at 435–37. Mr. Wilks was then sentenced to an indefinite term of not more than twenty-eight years imprisonment. Tr. at 473.

Based on this factual background, the petitioner presses five arguments in an effort to establish a denial of his right to counsel: (1) he did not waive the right to counsel but insisted upon it; (2) he did not elect to represent himself; (3) the choice he was given between accepting Mr. Demet's representation and self-representation operated to deny him the right to counsel; (4) he was prejudiced by the absence of representation at a critical stage in the proceedings; and (5) the trial court should have required Mr. Demet to continue to represent him.

**408**

The petitioner's first three contentions must be rejected on the basis of the court of appeals' recent decision in *United States v. Davis*, 604 F.2d 474 (7th Cir. 1979). In *Davis*, the trial court refused to appoint the attorney of the defendant's choice. Instead, the court informed the defendant that he had to choose between his court-appointed counsel and self-representation. As in the case at bar, the defendant Davis protested that he did not wish to proceed with his court-appointed attorney but that he did not want to represent himself. There, too, the court strongly advised the defendant to accept the assistance of his appointed counsel, but the defendant declined such assistance. The case proceeded to trial; however, the defendant Davis declined to cross-examine any of the government's witnesses and to present any defense. The jury convicted Mr. Davis on both counts of the indictment. The court of appeals affirmed.

■ After holding that an indigent defendant has no right to a court-appointed attorney of his choice, the court considered the defendant's claim that by requesting another appointed attorney and declaring that he could not represent himself, the defendant had not waived his right to counsel. Applying the waiver standard of *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the seventh circuit panel ruled that the defendant did knowingly and voluntarily waive his right to counsel. The court's reasoning applies with equal force to the case at bar.

Mr. Wilks' waiver of counsel was knowing and intelligent "in the sense that it was made with knowledge and appreciation of his rights, his alternatives, and the possible consequences of choosing among them." *Davis, supra*, at 482. On three separate occasions, the trial judge expressly told the petitioner Wilks that he had to choose between Mr. Demet and self-representation. *Compare United States ex rel. Higgins v. Fay*, 364 F.2d 219, 223 (2d Cir. 1966) (defendant "not accorded a clear cut explanation of his rights"); *State v. Renshaw*, 276 Md. 259, 347 A.2d 219 (1975) (trial court

failed to explain to defendant that firing appointed counsel meant self-representation). In addition, Mr. Wilks was advised of the advantages of proceeding with Mr. Demet and was fully aware of his own incompetence to conduct the defense. *Compare Tollett v. United States*, 444 F.2d 622, 625 (8th Cir. 1971) (trial court failed to explain the advantages of counsel over self-representation). In the face of these admonitions, and in response to the court's efforts to persuade him to accept Mr. Demet's assistance during both closing argument and the instruction conference, Mr. Wilks unequivocally rejected Mr. Demet's assistance.

As the court of appeals stated in *Davis*, Mr. Wilks' "repeated requests for new counsel establish that he knew that he had a right to court-appointed counsel and appreciated the importance of legal representation." At 482. The record shows that Mr. Wilks had encountered the criminal justice system before, as he had three prior felony convictions. Tr. at 181–82. Mr. Wilks was twenty-four years old and stated that he had the equivalent of a high school education. Tr. at 135. Finally, "[h]is numerous letters and motions . . . show that, notwithstanding his disclaimer in open court to the contrary, he possessed a basic comprehension of the manner in which trials proceed and the way legal arguments are made." *Davis, supra*, at 482–483. In light of all these factors, I believe the record amply demonstrates that the petitioner made his choice to proceed pro se "with his eyes open." *Id.*

■ My conclusion in this regard is not altered by the petitioner's statement that he had been hospitalized in a mental institution five times for observation and treatment. The record shows that before his trial commenced, the petitioner was examined by at least two psychiatrists and was certified competent to stand trial. Tr. at 9–10, 272, 293. While Mr. Wilks' courtroom behavior was erratic and occasionally violent, the medical testimony indicates that the petitioner's behavior was goal-directed and manipulative. Tr. at 275, 299. In

these circumstances, I find that the petitioner was mentally competent to appreciate his rights and the consequences of his choice.

■ Contrary to the petitioner's contention that the choice given him between Mr. Demet and self-representation was unconstitutionally coercive, I believe his election to proceed pro se was made voluntarily. *Davis, supra*, at 483. The great weight of authority supports the proposition that requiring the defendant to choose between his appointed counsel and self-representation, where appointed counsel is willing and able to conduct the defense, "is not constitutionally offensive." *Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir. 1976), *quoted in Davis, supra*, at 483. *See Fillipini v. Ristaino*, 585 F.2d 1163, 1167 (1st Cir. 1978); *United States ex rel. King v. Schubin*, 522 F.2d 527, 529 (2d Cir. 1975) (per curiam); *United States ex rel. Testamark v. Vincent*, 496 F.2d 641, 643–44 (2d Cir. 1974); *United States v. Morrissey*, 461 F.2d 666, 670 (2d Cir. 1972); *Kates v. Nelson*, 435 F.2d 1085, 1088–89 (9th Cir. 1970); *Leino v. United States*, 338 F.2d 154, 156 (10th Cir. 1964); *Glenn v. United States*, 303 F.2d 536, 541 (5th Cir. 1962).

■ As long as the defendant unequivocally renounces his appointed counsel, with an awareness that to do so means proceeding pro se, the legality of the election and the fact of the waiver are not disturbed by the defendant's declarations that he is not qualified to represent himself, that he wants another lawyer appointed, or by his failure to present any defense. *Davis, supra; United States ex rel. Testamark v. Vincent, supra*, 496 F.2d at 644. Therefore, Mr. Wilks' contention that he was prejudiced by the absence of representation during the latter stages of the trial is without merit.

■ In his petition, Mr. Wilks has not challenged the qualifications of attorney Demet, nor has he suggested that Mr. Demet was not prepared to present a defense. In fact, Mr. Demet's statement quoted above indicates that he was prepared to offer evidence to support an instruction on a lesser included offense. I believe that the petitioner's vague "complaints [at trial] about the quality of his legal representation were baseless." *Davis, supra*, at 483.

■ Nor do I believe that the trial judge was duty-bound to require Mr. Demet to proceed with the defense despite Mr. Wilks' unequivocal rejection of his services. The court's statement in *Keller v. State*, 75 Wis.2d 502, 509, 249 N.W.2d 773, 777 (1977), is directly on point:

> "While the duty of the trial court does not require it to impose counsel upon a defendant who is competent to and does make a valid decision to waive counsel, it does require a trial court to refuse to allow a defendant to proceed without counsel where the defendant is incapable of making or has not unequivocally made such a decision."

I find that the petitioner was capable of making and did unequivocally make a decision to waive his right to counsel when he fired Mr. Demet and proceeded pro se. Nevertheless, it should be noted that Mr. Demet remained in attendance at the court's request despite his rejection by Mr. Wilks. Therefore, Mr. Wilks' first ground of objection to his conviction must be rejected.

## II. RECUSAL OF THE TRIAL JUDGE

■ The petitioner contends that he was denied a fair trial before an impartial tribunal by the failure of the trial judge to recuse himself from the case after being physically attacked in the courtroom by the petitioner. Shortly after the attack, the trial judge commented:

> "[I]f he is found guilty, I am going to say it for the record, he is going away for so long they are going to forget that they ever knew him, and I want any reviewing court to know what my intentions are." Tr. at 145.

The judge also stated that there would be no mistrial in the case and characterized the petitioner as a coward. Tr. at 147–48. Neither the physical attack nor the judge's remarks occurred in the presence of the jury.

Judge Seraphim's comments regarding sentencing (made in the absence of the jury) reflect an adverse reaction to Mr. Wilks' conduct but do not demonstrate any prejudice which might reasonably be held to have resulted in a biased verdict on the part of the jurors. The petitioner has not directed my attention to any instances in the record showing that the trial judge acted in a manner, in front of the jury or otherwise, which was prejudicial to his rights. To be successful in his contention that he was denied a fair trial, I believe it is necessary for Mr. Wilks to show that he was prejudiced in fact. The judge's comments evidence umbrage resulting from Mr. Wilks' attack, but under the circumstances they do not add up to a showing of prejudice. *See United States v. Trigg*, 392 F.2d 860, 863 (7th Cir.), *cert. denied*, 391 U.S. 961, 88 S.Ct. 1863, 20 L.Ed.2d 874 (1968); *State ex rel. Mitchell v. Bowman*, 54 Wis.2d 5, 7, 194 N.W.2d 297 (1972).

Moreover, the petitioner's physical attack certainly did not require the trial judge to recuse himself:

"The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). *Accord, State v. Garner*, 54 Wis.2d 100, 104, 194 N.W.2d 649 (1962).

In a situation analogous to the case at bar, involving a challenge to a judge's qualifications to punish a person found guilty of committing a contempt in the judge's presence, the court of appeals for this circuit held that:

"It is a general rule that a direct contempt against the court is not sufficient to disqualify a court or a judge thereof." *Parmelee Transportation Co. v. Keeshin*, 294 F.2d 310, 315 (7th Cir. 1961) (citing *Patterson v. Colorado ex rel. Attorney General*, 205 U.S. 454, 463, 27 S.Ct. 556, 51 L.Ed. 879 (1907)).

The rationale for not requiring recusal even when the violent courtroom behavior of the defendant has some manifest effect on the judge's regard for the defendant is embodied in the Supreme Court's admonition that when "acts of contempt are palpably aggravated by a personal attack upon the judge, in order to drive the judge out of the case for ulterior reasons, the scheme should not be permitted to succeed." *Cooke v. United States*, 267 U.S. 517, 539, 45 S.Ct. 390, 396, 69 L.Ed. 767 (1925). For these reasons, I hold that the petitioner was not denied a fair trial because the trial judge refused to recuse himself after the petitioner physically attacked him in the courtroom, out of the presence of the jury.

## III. REFUSAL TO ACCEPT GUILTY PLEA

■ Some months before trial, the petitioner agreed to plead guilty to a lesser charge, carrying a maximum sentence of ten years. The trial judge refused to accept the bargain struck between Mr. Wilks and the state because the petitioner declined to admit that he committed the offense. Tr. of September 15, 1976, at 7–8. The petitioner now argues that he was denied due process by reason of the court's refusal to accept his guilty plea.

In my judgment, the petitioner has failed to exhaust his state remedies with respect to this contention as required by 28 U.S.C. § 2254(b), (c). In his appeal to the Wisconsin court of appeals, the petitioner couched this objection in terms of an abuse of discretion; nowhere in his brief did the petitioner raise the constitutional due process argument. Nor did the state appellate court, whose decision the supreme court of Wisconsin declined to review, address the due process issue in rejecting the petitioner's claim.

The exhaustion requirement is not satisfied simply because the factual basis of the state and federal claims is the same:

"We emphasize that the federal claim must be fairly presented to the state courts. . . . [W]e have required a state prisoner to present the state courts

with the same claim he urges upon the federal courts. . . . To be sure, respondent presented all the facts. Yet the constitutional claim . . . was never brought to the attention of the state courts." *Picard v. Connor*, 404 U.S. 270, 275–77, 92 S.Ct. 509, 512–513, 30 L.Ed.2d 438 (1972).

What the United States court of appeals for the first circuit stated in *Fillippini v. Ristaino, supra,* 585 F.2d at 1165, is equally true here: "Though the facts on which these two claims are grounded were before the state courts, the constitutional theories now relied on were never brought forward." Accordingly, without intimating any view of the merits of the petitioner's constitutional contention, I simply hold that I lack jurisdiction to consider it.

IV. CONCLUSION

Therefore, IT IS ORDERED that the petition for a writ of habeas corpus in this case be and hereby is dismissed.