COMMONWEALTH *vs.* RICHARD MARTEL.

Middlesex.      December 13, 1976. — January 20, 1977.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Practice, Criminal,* Directed verdict.

At the trial of a defendant for assault with intent to rob, evidence and the reasonable inferences that could have been drawn therefrom warranted findings that a certain automobile had been used in the attempted robbery and that the defendant, who had been identified standing next to the automobile, was the operator of the automobile during the attempted robbery. [35-37]

---

[2] In its brief the Commonwealth also suggests this as an alternative available to aggrieved defendants.

INDICTMENT found and returned in the Superior Court on May 9, 1973.

The case was tried before *Leen, J.*

*Marvin H. Margolies* for the defendant.

*James W. Sahakian*, Special Assistant District Attorney, for the Commonwealth.

HALE, C.J.   The defendant was convicted of assault with intent to rob and has appealed pursuant to G. L. c. 278, §§ 33A-33G. The only assignment of error which has been argued is the denial of the defendant's motion for a directed verdict. There was no error.

We proceed to summarize the evidence in its aspects most favorable to the Commonwealth. *Commonwealth* v. *Duffy*, 4 Mass. App. Ct. 655, 656 (1976). On February 22, 1973, at approximately 10:00 A.M. one McCann waited in the parking lot of St. Joseph's Hospital on Salem Street in Lowell for the arrival of an armored truck which was carrying payroll money to be delivered to the hospital. McCann, an off-duty Lawrence police officer, was working for the armored car service at this time to provide extra security. About 10:10 A.M. the truck arrived at the hospital's parking lot. McCann's son, Glenn, was the driver of the truck. He and a guard (Travers) disembarked. With McCann on the left, Glenn in the middle carrying the money, and Travers on the right, the three proceeded across Salem Street toward the hospital door. All three men were armed.

As the trio reached the middle of the street a car approached from their right at a very high speed and stopped abruptly alongside them. This put McCann at the left front, Glenn at the driver's window and Travers near the rear of the car. There were two persons in the car, both wearing heavy woolen masks which exposed only the eyes and the mouth and descended to the neckline. The vehicle was a green two-door car. The driver remained in the car, held a rifle out his open window and pointed it at Glenn. The operator ordered the three men to "freeze" and to "throw the money in here" (the car). McCann told his

son not to comply and began moving around the right side of the car. At that point the driver pointed the rifle toward McCann. Glenn and Travers then ran for cover, and Mc-Cann crouched down in front of the car to avoid the rifle's line of fire and drew his revolver. The passenger jumped out of the car and opened fire on McCann. In the exchange of shots the passenger was fatally wounded. The vehicle then sped away up Salem Street and made a left turn at Pawtucket Street toward Fletcher Street.

About the same time one McElroy, a Lowell police officer, was on duty and parked in a service station on Fletcher Street. While there, someone yelled for McElroy to follow a car that was proceeding down Fletcher Street. The vehicle was a green Chevrolet automobile, not a new model, occupied by one person. McElroy got into his cruiser and pursued the vehicle at a distance of 100 yards for less than a mile, with other vehicles in between. At the crest of a hill McElroy realized that he had lost sight of the vehicle. He reversed his direction and drove back to and took a left turn on Butterfield Street. The officer spotted a single set of tire tracks alternating between wet and dry spots on the street, indicating the recent passage of an automobile. The tire tracks led the officer to a green Chevrolet parked on Mt. Vernon Street. All of its windows were down. Two or three minutes had passed between the time the officer first spotted the car until he saw it on Mt. Vernon Street. He did not observe anyone in the vicinity of the car. The officer observed a rifle, a rifle clip, a yellow jacket, a tan folded coat and two canvas bags in the car. McElroy remained at the scene until other officers arrived, at which point the car was towed to the police station.

Before McElroy located the car one O'Donnell, a funeral director, and one Daley, his assistant, were returning by car from a funeral en route to O'Donnell's place of business. O'Donnell turned his car onto Mt. Vernon Street and stopped about two car lengths from the corner to allow a passenger to alight. As he started to drive away, O'Donnell observed a green Chevrolet about three car lengths away. He saw a dark-haired man with a beige coat draped over

Commonwealth *v.* Martel.

his shoulder and arm getting out of the car. O'Donnell identified that man at trial as the defendant. Daley, a passenger in the front seat of O'Donnell's car, also observed the man standing about fifteen feet away, next to the Chevrolet, holding a beige trench coat over his left arm. He observed that the man's dark hair was "messed up." Daley also identified that man at trial as the defendant. After noticing the man and vehicle on Mt. Vernon Street, O'Donnell and Daley went to the funeral home. In a few minutes O'Donnell left the funeral parlor, and, while proceeding in the direction of Mt. Vernon Street, he saw McElroy standing next to the same green vehicle. O'Donnell stopped and told McElroy of his observations. The defendant was arrested as the result of a photographic identification made by O'Donnell and Daley.

The sole question raised by a motion for a directed verdict is whether on this evidence and reasonable inferences therefrom the jury could find beyond a reasonable doubt that the car found on Mt. Vernon Street was the same one used in the attempted robbery and that the defendant had been the operator of that vehicle. See *Commonwealth* v. *Shea*, 324 Mass. 710, 713 (1949); *Commonwealth* v. *Fillippini*, 1 Mass. App. Ct. 606, 612 (1973). Although the Commonwealth's case is mainly circumstantial, "[p]roof of criminal conduct may be established by circumstantial evidence and inferences drawn therefrom." *Commonwealth* v. *Xiarhos*, 2 Mass. App. Ct. 225, 231 (1974). However, circumstantial evidence must be such as to warrant a finding of guilt. "The jury are permitted to draw rational inferences from the evidence, but no essential element of the crime may rest in surmise, conjecture, or guesswork." *Commonwealth* v. *Kelley*, 359 Mass. 77, 88 (1971).

We conclude that the evidence and the reasonable inferences that could have been drawn therefrom warranted the jury findings that the car found on Mt. Vernon Street was the car used in the attempted robbery on Salem Street and that the defendant was the operator of that car during the attempted robbery.

*Judgment affirmed.*