## COMMONWEALTH vs. KENNETH BARNES.

Hampden. January 5, 1987. — March 10, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Practice, Criminal*, Defendant pro se, Appeal, Competency to stand trial.
  *Constitutional Law*, Assistance of counsel, Waiver of constitutional
  rights. *Waiver. Evidence*, Cross-examination, Bias.

A criminal defendant was not entitled to a new trial by reason of the trial
  judge's failure to conduct a hearing or inquiry on his competency to
  waive counsel and conduct his own defense, where there had been no
  indication that the defendant suffered from any mental disorder or impair-
  ment sufficient to create a bona fide doubt as to his ability to make an
  informed decision to proceed without counsel. [388-390]
Where the facts and circumstances demonstrated a criminal defendant's
  appreciation of the consequences of deciding to proceed to trial without
  counsel, his waiver of counsel was not rendered ineffective by the judge's
  failure expressly to inform him of the sentence that could be imposed,
  or to advise him that, by representing himself, he might forfeit certain
  technical defenses. [390-392]
At a criminal trial in which the defendant proceeded without counsel, any
  deficiencies in the defendant's cross-examination of a prosecution wit-
  ness resulted from the defendant's own choice not to pursue the issue
  of bias, rather than from any erroneous ruling by the judge as to the
  scope of cross-examination. [392-393]
A criminal defendant who contended that his statement to police should
  have been suppressed was precluded from raising on appeal an issue
  that he did not raise either at trial or at the hearing on his motion to
  suppress. [393-394]

INDICTMENTS found and returned in the Superior Court De-
partment on February 23, 1984.

The cases were tried before *George C. Keady, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Terry Scott Nagel* for the defendant.

*Ariane D. Vuono*, Assistant District Attorney, for the Commonwealth.

NOLAN, J.   Kenneth Barnes was convicted on indictments charging larceny, burglary, burglary and assault upon an occupant, and assault and battery. Barnes challenges his convictions on the ground that his decision to conduct his own defense was constitutionally deficient. He also claims that the judge impermissibly foreclosed his cross-examination of a witness. Finally, he contends that his confession to the burglary and larceny charges should have been suppressed because it resulted from an arrest based upon a pretext, and thereby violated his Fourth Amendment rights. We took the case on our own motion. We conclude that there is no merit in his first two claims of error, and reject the suppression issue as not properly before us.

We set forth the relevant facts. On the morning of February 14, 1984, Barnes was arrested by Springfield police officers on an eleven-year-old traffic warrant.[1] The police found Barnes in the apartment where he had been living since November, 1983. Barnes was brought to the police station where the police read him a statement given them a few days earlier by Roger Pierce, a seventeen-year-old neighbor of Barnes. In the statement, Pierce confessed that he and Barnes had committed five break-ins in the apartment complex where they both lived. Four of these break-ins occurred in the apartment of Robert and Arvis Dodge. Pierce further admitted that, during two of the break-ins, he and Barnes had assaulted the Dodges.

The Dodges, father and son, were recluses of limited intelligence and had not reported the crimes to the police. After obtaining Pierce's confession, police went to the Dodges' apartment to question them about the crimes. The Dodges confirmed that they had been victims of robberies and assaults but were unable to identify the men involved or provide the dates on which the crimes occurred.

---

[1] The reason that the warrant was outstanding for that time was that Barnes had been released from prison in October, 1983, after serving nearly ten years as the result of pleading guilty to a charge of manslaughter.

When confronted with Pierce's statement, Barnes confessed that he had participated in the break-ins. He denied, however, that he had assaulted the Dodges. Barnes signed a statement in which he admitted committing larceny and burglary on five occasions.

After arraignment, Barnes's attorney moved to suppress that statement on the ground that Barnes had not been advised of his Miranda rights and had not properly waived those rights. After a hearing on June 13 and 14, 1984, the motion was denied and the case set for trial. On Wednesday, October 31, 1984, during the jury empanelment, Barnes's attorney informed the judge that he was experiencing some difficulty in communicating with his client. The problem was that Barnes did not understand the juror challenge process. Barnes apparently believed that, if jurors were challenged, they would not be replaced, leaving him with less than a twelve-person jury. The judge thereupon ordered a recess to allow the attorney to explain the system to Barnes.

When the court resumed, Barnes's attorney told the judge that Barnes wished to represent himself while retaining the attorney as an advisor. The judge briefly inquired about Barnes's comprehension of his rights and the problems involved in self-representation. In order to provide Barnes the opportunity to discuss with his attorney the wisdom of his decision, the judge dismissed the jury before it was sworn and set the trial date for Monday, November 5.

In the morning before the trial commenced, the judge more fully explained the disadvantages to Barnes of his course of action and then had Barnes sign a waiver of counsel form. Barnes made no opening statement and did not call any witnesses in his defense. He did cross-examine the prosecution witnesses and gave a very short summation. The jury returned guilty verdicts on eleven of sixteen indictments. The judge sentenced Barnes to a term of eighteen to twenty years on one conviction for burglary and assault upon an occupant. The sentences on nine convictions were ordered to run concurrently. One conviction was placed on file.

After his convictions, Barnes continued his active role in his own defense despite the availability of court-assigned appellate counsel. Barnes filed numerous pro se motions for relief. When counsel sought to withdraw these motions, Barnes petitioned the court to dismiss the attorney. In April, 1985, Barnes was ordered to undergo an examination to determine his competency to waive counsel. The examining psychiatrist concluded that Barnes was competent, but Barnes decided not to exercise his right to waive counsel. Counsel filed a motion for a new trial, which was denied.

Barnes contends that he is entitled to a new trial because the trial judge failed to conduct a hearing or inquiry on his competency to waive counsel. According to Barnes, the judge had notice that he might be incompetent to waive counsel as a result of an earlier court-ordered psychiatric examination to assess his competency to stand trial and his criminal responsibility.[2] Therefore, Barnes insists that the decisions in *Westbrook* v. *Arizona*, 384 U.S. 150 (1966) (per curiam), and *Commonwealth* v. *Wertheimer*, 19 Mass. App. Ct. 930 (1984), mandate a separate examination of his competency to waive counsel. We do not agree.

In *Westbrook*, the Supreme Court observed that while the "petitioner received a hearing on the issue of his competence to stand trial, there appears to have been no hearing or inquiry into the issue of his competence to waive his constitutional right to the assistance of counsel and proceed, as he did, to conduct his own defense." *Id.* at 150. The Court's review of the record required that the issue of the petitioner's competency to waive counsel should be "re-examined in light of our decision . . . in *Pate* v. *Robinson*, 383 U.S. 375 [1966]." *Id.* at 151.

---

[2] The record does not indicate why Barnes was ordered to undergo this competency examination. The most likely reason was that, while in prison, Barnes had been sent to M.C.I. Bridgewater for an unspecified length of time. The psychiatric report revealed that Barnes was 35 years old. He had an eleventh grade education, having left school when he was 18. The psychiatrist concluded that evidence of mental illness was lacking, that Barnes was aware of the nature of the crimes he was charged with, and was able to assist counsel with the preparation of his defense.

The *Pate* Court held that the trial judge's failure to require a hearing on the defendant's contention that he was insane denied him his constitutional right to a fair trial. *Id.* at 385. There was evidence that the defendant Pate had a long history of disturbed behavior, had been confined as a psychopathic patient and had committed acts of violence, including the killing of his infant son and an attempted suicide. Four defense witnesses testified that the defendant Pate was insane. "Where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial," a sanity hearing is constitutionally required. *Id.*

We therefore view *Westbrook* as necessitating a competency hearing or inquiry to waive counsel only where there is some indication of mental disorder or impairment sufficient to create a "bona fide doubt" as to the defendant's ability to make an informed decision to proceed without counsel.[3] *Evans* v. *Raines*, 534 F. Supp. 791, 794-795 (D. Ariz. 1982), aff'd and remanded on other grounds, 705 F.2d 1479, 1480-1481 (9th Cir. 1983). See *People* v. *Leever*, 173 Cal. App. 3d 853, 864

---

[3] The *Wertheimer* court concluded that "*Westbrook* is usually read as holding that the . . . standard of competence [to waive counsel] 'is vaguely higher than the standard of competence to stand trial.'" *Commonwealth* v. *Wertheimer*, 19 Mass. App. Ct. 930, 931 (1984), quoting *United States ex rel. Konigsberg* v. *Vincent*, 562 F.2d 131, 133 (2d Cir. 1975). In light of our disposition of this issue, we reserve opinion on whether a second psychiatric examination is required when the issue of competency to waive counsel is properly raised before a trial judge. In these circumstances, a record inquiry by the judge as to whether there has been a knowing and intelligent waiver may be sufficient. See Silten & Tullis, Mental Competency in Criminal Proceedings, 28 Hastings L. J. 1053, 1067-1068 (1977), suggesting that understanding the disadvantages of proceeding without counsel presents "nothing that is conceptually more difficult to comprehend than that which every defendant must be able to understand in order to be found competent to stand trial." The higher standard for waiver of counsel applies "not because of the defendant's decision to waive counsel, but because the waiver of counsel necessarily embraces an assessment of the defendant's mental competency to conduct his own defense." See *State* v. *Hahn*, 106 Wash. 2d 885, 892 (1985).

In addition, it does not follow that evidence of a mental disorder per se renders a defendant incapable of a waiver. See, e.g., *State* v. *Hahn*, 106 Wash. 2d 885, 889-901 (1985); *State* v. *Hartford*, 130 Ariz. 422, 425 (1981), cert. denied, 456 U.S. 933 (1982).

(1985); *State* v. *Bauer*, 310 Minn. 103, 123 (1976). See also *State* v. *Doss*, 116 Ariz. 156, 159 (1977).

There was no indication that Barnes suffered from any mental problems. The psychiatrist's examination expressly concluded that Barnes was competent to stand trial and that he was not impaired by any mental disorder which would have interfered with his capacity to appreciate the criminality of his conduct. A trial judge is only required to act reasonably on the facts before him. Therefore, the judge was not required to hold an inquiry into Barnes's mental competency to waive counsel. Barnes "does not dispute that he was competent to stand trial; from this fact the trial court was entitled to infer that he was also competent to waive his right to counsel." *United States* v. *Hafen*, 726 F.2d 21, 25 (1st Cir.), cert. denied, 466 U.S. 962 (1984). Moreover, counsel for Barnes, "who had represented him for [two] months preceding trial and who was consequently in a better position than the trial judge to assess his mental state, made no objection to the validity of [Barnes's] decision to proceed pro se." *Id.* "Although a criminal defendant cannot waive his right to a *Pate* hearing, . . . 'the failure of defendant or his counsel to raise the competency issue [is] persuasive evidence that no *Pate violation occurred.'*" *Hance* v. *Zant*, 696 F.2d 940, 949 (11th Cir.) cert. denied, 463 U.S. 1210 (1983), quoting *Reese* v. *Wainwright*, 600 F.2d 1085, 1092 (5th Cir.), cert. denied, 444 U.S. 983 (1979).

We are next faced with the issue of whether the decision by Barnes to waive counsel was knowing and intelligent. Barnes argues that the waiver was ineffective because of the judge's failure to inform him of the potential sentence that could be imposed if he was found guilty. He also claims that he was not told of valuable defenses of a technical nature which could be irretrievably lost by his failure to raise them in a timely fashion.

We have not prescribed the questions that a judge must pose to an accused who desires to represent himself nor is there any "particular piece of information that is essential to an effective waiver of counsel." *Maynard* v. *Meachum*, 545 F.2d 273, 279 (1st Cir. 1976). The validity of a defendant's waiver depends

on the particular facts and circumstances of each case. *Johnson
v. Zerbst*, 304 U.S. 458, 464 (1938).

The focus of our review is the defendant's subjective under-
standing of his decision and its consequences. See *Common-
wealth* v. *Lee*, 394 Mass. 209, 216-217 (1985). We must be
confident that the defendant was "adequately aware of the
seriousness of the charges, the magnitude of his undertaking,
the availability of advisory counsel, and the disadvantages of
self-representation." *Commonwealth* v. *Jackson*, 376 Mass.
790, 795 (1978). In assuring ourselves of these concerns, we
consider not only the trial record, but also the defendant's
"background, experience and conduct," *Maynard* v. *Meachum,
supra* at 278. This includes "such factors as his involvement
in previous criminal trials, his representation by counsel before
trial, and the continued presence of advisory counsel at trial
in determining whether he understood what he was getting
into." *Id.* at 279.

The colloquy between the judge and Barnes, Barnes's two
prior experiences with the criminal justice system, and the
availability of counsel in the pretrial proceedings and the trial
itself, convince us that Barnes's waiver was constitutionally
effective. Although we have noted that a defendant "should
have a general appreciation of . . . the penalties he may be
exposed to before deciding to take a chance on his own skill,"
*Lee, supra* at 216-217, quoting *Maynard* v. *Meachum, supra*
at 279, the mere failure so to inform Barnes did not invalidate
his waiver. The cases involving waiver clearly indicate "that
there is no per se rule that failure to expressly inform a defendant
of the . . . minimum and maximum sentence renders his waiver
of counsel unconstitutional." *United States ex rel. Nieves* v.
*O'Leary*, 606 F. Supp. 1478, 1483 (E.D. Ill. 1985). Where
the facts and circumstances demonstrate the defendant's ap-
preciation of his waiver, a contrary ruling based upon failure
to warn him of potential penal consequences "would represent
a triumph of form over substance." *Id.*, quoting *Creighbaum*
v. *Burke*, 398 F.2d 822, 823 (7th Cir.), cert. denied, 393 U.S.
955 (1968). It also follows that the judge's omission of notice
to Barnes that he might forfeit certain technical defenses if he

represented himself did not affect the integrity of the waiver. See *Carnley* v. *Cochran*, 369 U.S. 506, 516 (1962). See also *Commonwealth* v. *Fillippini*, 2 Mass. App. Ct. 179, 182-184 (1974).

Barnes's next claim of error concerns his cross-examination of Roger Pierce. Having satisfied ourselves that Barnes intelligently waived his right to counsel, we examine his claims of error in the light of our warning in earlier cases that the "right of self-representation is not 'a license not to comply with relevant rules of procedural and substantive law.' *Faretta* v. *California*, 422 U.S. 806, 834-835 n.46 (1975). A pro se litigant is bound by the same rules of procedure as litigants with counsel." *International Fidelity Ins. Co.* v. *Wilson*, 387 Mass. 841, 847 (1983). Barnes attempted to demonstrate possible bias by exploring the fact of Pierce's arrest on a charge different from the ones for which Barnes was indicted. When Barnes asked Pierce for what crime he was arrested, Pierce's attorney objected on the ground that an answer by Pierce might incriminate him as to the charges pending before a grand jury. The judge mistakenly concluded that Pierce had answered that he was arrested for another incident because he ruled that he would allow the answer to stand but precluded further questioning on the subject. Barnes claims that it was error for the judge to foreclose entirely his attempt to impeach Pierce's testimony.

A criminal defendant possesses a constitutional right to a full and effective cross-examination of the State's witnesses. *Davis* v. *Alaska*, 415 U.S. 308, 316 (1974). In the exercise of this right, the accused may inquire about pending charges against the witness. *Commonwealth* v. *Hogan*, 379 Mass. 190, 191 (1979). Where the witness is an accomplice of the defendant, liberal cross-examination should be permitted to allow the accused to show what induced the accomplice to testify for the State. See, e.g., *United States* v. *Barrett*, 766 F.2d 609 (1st Cir.), cert. denied, 474 U.S. 923 (1985). "[T]he pendency of criminal charges might have inspired hope of lenity and fear of punishment if such lenity were not obtained." *Commonwealth* v. *Connor*, 392 Mass. 838, 841 (1984).

The right of confrontation, however, is not absolute. It is subject to the sound discretion of the trial judge who may restrict cross-examination regarding potential bias when further questioning would be redundant. See *Commonwealth* v. *Porter*, 384 Mass. 647, 658 (1981). Furthermore, the accused "cannot invade the witness's protection from self-incrimination." *Commonwealth* v. *Funches*, 379 Mass. 283, 292 (1979). If a defendant believes that the judge improperly restrained his cross-examination of a witness, the defendant must demonstrate that the judge abused his discretion and that he was prejudiced by such restraint. *Commonwealth* v. *Repoza*, 382 Mass. 119, 125-126 (1980).

The contention that the judge completely prevented Barnes's attempt to establish Pierce's bias arising from his concern about his arrest on another charge is groundless. The judge placed in the record that Pierce had been arrested for another crime. The judge then informed Barnes that Pierce did not have to testify about the "incident" which led to his arrest. The details of that arrest were not relevant or proper for impeachment purposes. See *Commonwealth* v. *Clifford*, 374 Mass. 293, 305 (1978).

Barnes could have asked Pierce if he had made any deal or arrangement with the prosecution in return for an agreement to testify against Barnes. But Barnes made no such inquiry nor did he inform the judge as to the line of questioning he wished to pursue. Instead, Barnes cross-examined Pierce about other matters and thereby abandoned his efforts to impeach Pierce. The failure to probe into the crucial area of whether Pierce had a motive to lie was the direct result of Barnes's own choice. Since Barnes never made it apparent to the judge why he raised the issue of pending charges against Pierce, the judge never had the opportunity to rule on the matter and thus there was no abuse of discretion. See *Commonwealth* v. *Henson*, 394 Mass. 584, 588-589 (1985).

The last argument raised by Barnes is that the statement he gave to the police should be suppressed because it was tainted by an arrest that was clearly a pretext to allow the police to question Barnes about the burglaries. We are not obliged to

address this issue because it was not raised during the suppression hearing or at trial and it requires resolution of factual questions which are not open to us. The defendant is thereby precluded from raising it for the first time on appeal. *Commonwealth* v. *Marchionda*, 385 Mass. 238, 242 (1982). See *United States* v. *One Clipper Bow Ketch Nisku*, 548 F.2d 8, 10-11 n.3 (1st Cir. 1977).

*Judgments affirmed.*