Commonwealth *v.* Mullen.

COMMONWEALTH *vs.* TIMOTHY E. MULLEN.

No. 07-P-463.

Suffolk. January 23, 2008. - June 25, 2008.

Present: RAPOZA, C.J., ARMSTRONG, LENK, DUFFLY, & RUBIN, JJ.

*Notice,* Timeliness. *Appeals Court,* Jurisdiction. *Practice, Criminal,* Appeal, Assistance of counsel, Waiver, Defendant pro se. *Constitutional Law,* Assistance of counsel, Waiver of constitutional rights.

This court, prompted by confusion on a lower court's docket sheets to verify independently that it had jurisdiction to decide an appeal from a criminal conviction, concluded that the appeal was timely filed despite a computer-generated docket sheet that did not clearly show the date of entry of an order denying the defendant's motion for a new trial, but only listed a date when the order was filed, where a handwritten docket sheet contained an entry regarding the decision on the motion for a new trial that indicated that the order from which the defendant appealed was entered on the docket almost seven months after the date of filing noted on the computer-generated docket, and the defendant appealed within thirty days of the date indicated on the handwritten docket sheet. [137-140]

The record at a criminal trial was inadequate to support a conclusion that the defendant's waiver of counsel was knowing and intelligent, where the judge hearing the motion for waiver made no inquiry of the defendant and did not provide him with any information necessary to make an informed decision before the defendant signed a waiver of counsel form that did not contain the certification required by S.J.C. Rule 3:10, § 3, and a later statement from a different judge hearing the defendant's motion for standby counsel did nothing to establish whether the defendant subjectively understood his decision and its consequences; where nothing in the defendant's background, experience, and conduct demonstrated the requisite understanding; and where the fact that the defendant conducted himself appropriately during the proceedings did not rise to the level of demonstrating that any prior waiver was knowing and intelligent. [140-145]

COMPLAINT received and sworn to in the Central Division of the Boston Municipal Court Department on April 4, 2005.

The case was tried before *Annette Forde,* J.

*Lois J. Martin* for the defendant.

*Rosemary Daly,* Assistant District Attorney, for the Commonwealth.

Rubin, J. After a trial at which he represented himself, the defendant was convicted of assault and battery on a public employee, G. L. c. 265, § 13D, and resisting arrest, G. L. c. 268, § 32B. He appeals from an order denying his motion for a new trial.

Drawing all reasonable inferences in favor of the Commonwealth, the jury could have found the following facts. On the afternoon of April 3, 2005, Boston police Officer Michael Leary was directing traffic near what was then known as the Fleet Center following a Boston Celtics basketball game. Officer Leary signalled for a crowd of pedestrians to stop so that automobile traffic could exit a garage, waving the automobile traffic on with one hand while holding the other out to direct the pedestrian crowd to stop. The defendant walked into Officer Leary's arm, then pushed the officer in the chest with both hands, forcing him back four or five feet. Officer Leary told the defendant that he was under arrest and attempted to gain hold of him. The two struggled and Officer Leary fell backward, hitting his head on the pavement. Several pedestrians came to the officer's assistance. Pedestrians also alerted Sergeant Kenneth O'Brien, who was twenty-five or thirty feet away. When Sergeant O'Brien reached the scene, the defendant was on top of or adjacent to Officer Leary, who was bleeding from his head. Sergeant O'Brien pulled the defendant off Officer Leary. After the officers gained control of the defendant, he was handcuffed and placed inside a police cruiser, where he attempted to kick out the windows while screaming threats. A police wagon was called and the defendant was transferred to it. In addition to treatment at a hospital for the cut on his head, Officer Leary required approximately six weeks of physical therapy due to shoulder injuries he received in the altercation. The defendant did not deny that an altercation took place; he argued however that Officer Leary had initiated the encounter by assaulting him, and that he acted out of necessity.

I.

At the outset, we are faced with a jurisdictional question. Although the parties both take the position that this appeal was timely filed, confusion on the docket sheet prompts us to verify

independently that we have jurisdiction to decide the case. See *Mark* v. *Kahn,* 333 Mass. 517, 519 (1956).

The trial judge signed her order denying the defendant's motion for a new trial on August 18, 2006. The defendant's notice of appeal was filed on March 13, 2007. The notice of appeal recited that the order "was not evidently docketed correctly and did not issue to the parties until March 8, 2007." In his brief, the defendant states that the order "was filed incorrectly and not distributed to the parties until March 8, 2007." The Commonwealth states in its brief that "the parties were not notified of the judge's order until March 8, 2007."

The thirty-day period for filing a notice of appeal runs not from the time an order denying a new trial is signed, or from the time the parties receive notice of it. Rather, it runs "from the date of entry" of the order. Mass.R.A.P. 4(b), as amended, 378 Mass. 928 (1979). This means that date on which notation of the judgment or order was actually entered on the docket, whether by hand or by input of data into a computer. The computer-generated docket sheet of the Boston Municipal Court (BMC) in this case does not clearly show the date of entry of the order denying the defendant's motion for a new trial. Indeed, it does not provide the date of "entry" of anything included upon it. Cf. Mass.R.Civ.P. 79(a), 365 Mass. 839 (1974) ("The entry of an order or judgment shall show the date the entry is made"). Rather, it lists only a date when each item was "filed." It states that the order denying a new trial was "filed" on August 18, 2006, the date it was signed.

The word "filed" typically refers to the date on which parties submit materials to the court. See, e.g., Mass.R.A.P. 13(a), as amended, 406 Mass. 1601 (1990) (stating, inter alia, that "filing" is timely when "papers are received by the clerk within the time fixed for filing"). It is not necessarily the same as the date on which those filings are entered on the docket. See, e.g., *Samuels* v. *SUFA Corp.,* 38 Mass. App. Ct. 922, 922 (1995) (distinguishing filing of document from entering it on docket). To the extent the computer-generated BMC docket sheet includes notations about such filings by parties, it thus appears that the date indicated is the filing date, rather than the date of entry.

The notation on the computer-generated docket sheet of a "filing" date for the order denying a new trial below, however, is

more confusing. The date of filing of court orders and judgments has no legal significance under the rules. The only relevant date under the rules is the date of entry, but the date denominated "filed" is the only date apparent on that docket sheet.

In the absence of any contrary indication, the "filed" date might be thought to indicate that that was the date the order was not only signed, but entered on the docket. If the order had been entered on the docket on August 18, 2006, the notice of appeal in this case would have been filed well beyond the thirty-day period specified in the rules.

There is also, however, for reasons that are not apparent to us, a separate handwritten BMC docket sheet in this case. Some entries appear on both the computer-generated docket sheet and the handwritten docket sheet. Others appear only on one or the other docket sheet. The handwritten docket contains a two-line entry dated March 9, 2007, that reads, "Decision on [Defendant's] Motion for New Trial/Denied on August 18, 2006."

There is no indication on the handwritten docket that the March 9, 2007, date is anything but the date this notation was entered upon the docket. The presence of this entry suggests that the order was entered on the docket on March 9, 2007, and that the computer-generated docket sheet does not recite the date of entry. Indeed, we can see no reason why the March 9, 2007, entry would have been made had the order already been entered on the docket on August 18, 2006.

Further, the computer-generated docket also has an entry with a "filed" date of March 15, 2007, which states "BMC [a]ppeal [l]etter/[s]ent on: 03/15/2007." Under Mass.R.Crim.P. 32(c), 378 Mass. 903 (1979), the clerk was required upon entry of the order denying the motion for a new trial to "immediately mail" to the parties "a notice of th[e] entry" of that order and to "record the mailing in the docket." This additional docket entry apparently refers to this rule 32(c) letter. The indication that the letter was mailed on March 15, 2007, provides further support for the conclusion that the order from which the defendant appeals had on that date only recently been entered on the docket. Cf. *Standard Register Co.* v. *Bolton-Emerson, Inc.*, 35 Mass. App. Ct. 570, 571-72 (1993) (discussing entry of judgment and parallel Massachusetts Rules of Civil Procedure).

We conclude, therefore, that notwithstanding the ambiguous computer-generated docket, the order denying a new trial was entered on the docket on March 9, 2007, not August 18, 2006. We are thus satisfied that the notice of appeal was timely filed and therefore that we have jurisdiction over this appeal.

## II.

On the merits of the appeal, the defendant argues that his waiver of counsel did not conform to the standards for waiver of counsel we articulated in *Commonwealth* v. *Mott*, 2 Mass. App. Ct. 47 (1974). This is familiar ground. First, the request to proceed pro se must be made unequivocally. Second, it must be asserted prior to trial. Finally, it must be exercised knowingly and intelligently. *Id.* at 51.

The first two requirements were met here. The defendant's appointed counsel failed to appear at the scheduled time for the defendant's pretrial conference, apparently due to an illness in the family. After meeting counsel before the rescheduled proceedings, the defendant asserted before one judge (not the judge who had previously appointed counsel) that he wanted to represent himself, and he signed a waiver of counsel form. At the next pretrial hearing, held before a second motion judge, he asked for the appointment of standby counsel, but again asserted, "I want to represent myself." He asked if it would be "possible for you to appoint an attorney to help guide me . . . just to make sure I follow the procedures." At no time once he sought to represent himself did the defendant equivocate with respect to his desire to proceed pro se. And, as the recitation above makes clear, his request to proceed pro se was made well in advance of trial.

The record, however, is inadequate to support a conclusion that the defendant's waiver of counsel was knowing and intelligent. In determining whether a waiver is knowing and intelligent, it is our task to evaluate "the defendant's subjective understanding of his decision and its consequences." *Commonwealth* v. *Barnes*, 399 Mass. 385, 391 (1987). In *Mott*, we spoke of the need for a "meaningful inquiry" by the trial judge "after being informed that the defendant preferred to defend himself." 2 Mass. App. Ct. at 52. This is not to say that a knowing and intelligent waiver

requires that any specific questions or answers be given. The Supreme Judicial Court has explained:

> "We have not prescribed the questions that a judge must pose to an accused who desires to represent himself nor is there any 'particular piece of information that is essential to an effective waiver of counsel.' *Maynard* v. *Meachum*, 545 F.2d 273, 279 (1st Cir. 1976). . . . The focus of our review is the defendant's subjective understanding of his decision and its consequences. See *Commonwealth* v. *Lee*, 394 Mass. 209, 216-217 (1985). We must be confident that the defendant was 'adequately aware of the seriousness of the charges, the magnitude of his undertaking, the availability of advisory counsel, and the disadvantages of self-representation.' *Commonwealth* v. *Jackson*, 376 Mass. 790, 795 (1978)."

*Commonwealth* v. *Martin*, 425 Mass. 718, 719-720 (1997), quoting from *Commonwealth* v. *Barnes*, 399 Mass. at 390-391.

When the defendant initially sought to represent himself, the first motion judge, at least on the record, made no inquiry of the defendant, nor did she provide him with any information. She said simply, "Okay. Could we give Mr. Mullen a [w]aiver of [c]ounsel?" The defendant was given and signed a waiver form.[1] There was thus no colloquy on the record concerning the defendant's decision to proceed pro se. We have expressed a preference for "inquiry about [the defendant's] understanding of his situation." *Commonwealth* v. *Moran*, 17 Mass. App. Ct. 200, 208 n.5 (1983); see *id.* ("A colloquy between the judge and defendant by which the defendant is warned of the difficulties involved in rejecting the assistance of counsel would be a useful procedure to nail the point down"). We recognize that defendants who seek to proceed pro se may sometimes strongly insist that they be permitted to represent themselves; indeed, the

---

[1]That form stated:

> "I, the above-named defendant, have been informed of my right to have a lawyer appointed by the court at public expense if I am found indigent or to hire a lawyer at my own expense to represent me at any stage of the proceedings in this case. I understand this right to a lawyer.
>
> "I ELECT TO PROCEED WITHOUT A LAWYER AND I WAIVE MY RIGHT TO A LAWYER."

judge's decision denying the defendant's motion for a new trial may be read to suggest that that was the case here. But the court must nonetheless make sure a defendant's waiver is made with the required understanding.

Standing alone, the interaction with the first motion judge and the defendant's signature on the waiver form are inadequate to permit us to conclude that the defendant's waiver was knowing and intelligent. He was provided with none of the information necessary to make an informed decision, nor was he asked whether he understood the consequences of the decision he made. Further, the waiver form he signed did not contain the certification required by S.J.C. Rule 3:10, as amended, 416 Mass. 1306 (1993), which requires that waiver of counsel be accomplished by signing a form that contains a certificate signed by the judge that he or she has properly informed the defendant in accordance with that rule and G. L. c. 211D, § 5, of his or her right to counsel, and that the party has knowingly elected to proceed without a lawyer. See S.J.C. Rule 3:10, § 3. The judge's signing of the required certification, while not conclusive, provides some evidence that the defendant's waiver is knowing and intelligent. Cf. *Commonwealth* v. *Cavanaugh,* 371 Mass. 46, 54 & n.5 (1976).[2]

At the subsequent hearing where the defendant requested standby counsel, the second motion judge said to standby counsel, in the defendant's presence:

> "I would hope that after talking with [the defendant], he would realize that you are an experienced, competent and excellent trial attorney, who is more than capable of representing [the defendant].

> "Because if [the defendant] wishes to go pro se, since he's

---

[2]The defendant hypothesizes that the court used an "outdated" form, although the certification requirement was added to the Supreme Judicial Court Rules some fifteen years ago in 1993. See S.J.C. Rule 3:10, as amended, 416 Mass. 1306 (1993). Judicial compliance with rule 3:10 is mandatory, and the rule is designed to remind the judge accepting the waiver of his or her responsibility properly to inform the defendant of his or her rights and to ensure that any waiver is voluntary. Following the proper procedure here might well have avoided the instant dispute. "The primary responsibility for insuring that a written waiver of counsel form has been executed and filed lies with the court." *Commonwealth* v. *Hurst,* 39 Mass. App. Ct. 603, 604 (1996).

not skilled in the areas of the law and/or evidence, it could be a situation — and this does carry a jail penalty. [The defendant] could be jeopardizing himself.

"So, [the defendant], I can tell, the way he's written the motions, is an intelligent person. And I would assume that after he sits down and talks to you, he would feel very comfortable in having you represent him in the matter."

The Commonwealth argues that this "colloquy was sufficient to establish that the defendant's decision to waive his right to counsel and exercise his right to self-representation was made knowingly and intelligently."

The second motion judge was doubtless unaware that the defendant had not participated in an adequate colloquy at the time of his initial waiver, and his statement was obviously not intended to replace a proper colloquy on the defendant's request to proceed pro se. In theory, such a statement could have apprised the defendant of the seriousness of the charges, the magnitude of the undertaking, and the disadvantages of self-representation. But there is nothing in the record from which we can establish what the Commonwealth correctly acknowledges is the important fact: that the defendant subjectively understood his decision and its consequences. There is no evidence that the defendant heard and understood the information in the second motion judge's statement. It did not call for a response and none was given.

The Supreme Judicial Court has also permitted consideration of "not only the trial record, but also the defendant's 'background, experience and conduct.' This includes 'such factors as his involvement in previous criminal trials, his representation by counsel before trial, and the continued presence of advisory counsel at trial in determining whether he understood what he was getting into.' " *Commonwealth* v. *Barnes*, 399 Mass. at 391, quoting from *Maynard* v. *Meachum*, 545 F.2d at 278, 279. There is nothing in the defendant's background, experience and conduct, however, that demonstrates the requisite understanding. We have no information indicating that the defendant had "considerable" experience with the criminal justice system.[3] Compare *Com-*

---

[3]The Commonwealth does not contend otherwise. At sentencing, the Com-

*monwealth* v. *Pamplona*, 58 Mass. App. Ct. 239, 241-242 & n.1 (2003).[4] Nor is this a case where the defendant was represented consistently by counsel prior to trial or in which standby counsel was present at trial. Compare, e.g., *Commonwealth* v. *Barnes*, 399 Mass. at 391 ("The colloquy between the judge and Barnes, Barnes's two prior experiences with the criminal justice system, and the availability of counsel in the pretrial proceedings and the trial itself, convince us that Barnes's waiver was constitutionally effective").

Finally, the Commonwealth suggests that the defendant "conducted himself appropriately" during the proceedings below, undertaking formally appropriate actions (he cross-examined witnesses, moved to dismiss the charges at the end of the Commonwealth's case, and made a closing argument). But even assuming without deciding that, in the absence of a colloquy or some other indication of understanding, the quality of a defendant's attempt at self-representation might be considered in evaluating his decision to proceed without counsel, it would have to rise well above the basic level of appropriate conduct described here to demonstrate that any prior waiver was knowing and intelligent. Compare *Commonwealth* v. *Lee*, 394 Mass.

monwealth reported to the trial judge that the defendant had no other criminal record in Massachusetts. The Commonwealth reported that it had information from a newspaper article that suggested the defendant had some type of record from Rhode Island, but that there was no information available about it because it appeared to have been "expunged" or "sealed." And, as the Commonwealth acknowledged, even if a court could rely on this, there is no indication on the record that the incident to which the newspaper report referred even involved a matter that went to trial.

[4]In *Commonwealth* v. *Pamplona, supra* at 241-242, we relied upon our conclusion that the defendant had considerable experience with the criminal justice system in holding that, in all the facts and circumstances, "the judge's colloquy" was not "insufficient." In that case there was a "truncated" colloquy when the defendant asserted, after jury selection, that he did not want to proceed with appointed counsel — an act we held the trial judge could properly have concluded was "a manipulative eleventh hour attempt to obstruct the orderly disposition of the case." *Id.* at 241, quoting from *Commonwealth* v. *Moran*, 17 Mass. App. Ct. at 207. The trial judge properly explained to the defendant there that the consequence of refusing without good cause to proceed with appointed counsel would be self-representation, and in the ensuing colloquy the defendant asserted in response to questions that he understood that there were difficulties inherent in representing himself and that knowledge of the law and of the rules of evidence would be helpful at trial. *Id.* at 241-242.

at 219 (legal sophistication of pro se defendant cited only as providing "further support" for conclusion of knowingness and intelligence that court had already reached); *Commonwealth* v. *Moran*, 17 Mass. App. Ct. at 209 (noting that "defendant also appears to be somewhat conversant with court procedures" as part of lengthy discussion of many indications that defendant's waiver was knowing and intelligent).[5]

Because the record does not support a finding that the defendant's decision to waive his right to counsel was both knowing and intelligent, we conclude that his waiver was constitutionally ineffective. The judgments must be vacated, findings set aside, and the order denying the defendant's motion for a new trial reversed.

*So ordered.*

---

[5]We note that in *Commonwealth* v. *Pamplona, supra* at 243, we examined the propriety of the defendant's conduct of his defense at trial only in evaluating his claim that he had not been competent to waive his right to counsel, not in our discussion of the knowingness and intelligence of that waiver. See note 4, *supra.* While the defendant has not raised a claim of incompetence here, we also note that at sentencing below, the trial judge did order the defendant to obtain psychiatric treatment as a condition of probation.