On November 1, 2016, the defendant, David R. Tibets, after waiving his right to counsel and his right to a hearing, admitting that he had violated the conditions of his probation, was found in violation of his probation by a District Court judge. On January 4, 2017, the judge revoked his probation and sentenced him to a term of incarceration in the house of correction for eighteen months. Because we agree with the defendant that the judge failed to obtain a valid waiver of the right to counsel and of the right to a hearing, we vacate the order.
 

 Background
 
 . The essential facts are not in dispute. On December 22, 2015, while represented by counsel, the defendant admitted to sufficient facts on a complaint charging him with unlawful possession of a class B controlled substance, subsequent offense, in violation of G. L. c. 94C, § 34. After a standard colloquy, the case was continued without a finding to December 20, 2016. The defendant was placed on probation. In addition to the standard conditions of probation, the defendant was ordered to remain drug free and to submit to random drug testing.
 

 On September 30, 2016, the defendant was issued a notice of probation violation and hearing alleging that he had committed a new criminal offense (possession of heroin) the previous day, had failed to provide drug screens, and had "admitted [to the] use of heroin every day for [the] last 6 months." A probation violation hearing took place on November 1, 2016. After the defendant signed a waiver of counsel form and a waiver of the right to a hearing form (which included an admission to the probation violations), the judge (hereinafter, sentencing judge) heard a recitation of the alleged violations and the probation department's recommendation that the conditions of probation be modified, requiring the defendant to enter and complete the "Level III" substance abuse treatment program with the office of community corrections (OCC) and that the case be continued without a finding for one year. The sentencing judge did not revoke probation, but "stayed" final disposition until January 4, 2017. The sentencing judge informed the defendant that if he failed to report to the OCC, he would be sent back to jail and ordered the defendant to pay the monies that he owed to the court. The sentencing judge informed the probation officer that if there were any problems before the next scheduled date, the matter should be immediately brought to his attention.
 

 About one month later, in December, 2016, according to a police report, the defendant was observed using heroin. The probation officer requested a warrant for the defendant's arrest, which was issued. The defendant was served in court on December 9, 2016, with a notice of probation violation and hearing scheduled for December 12, 2016, and was detained. The defendant was brought into court on December 12, 2016; December 16, 2016; and December 21, 2016, and each time the sentencing judge was not available. A different judge conducted the hearing on December 16, 2016, and the defendant, represented by counsel, requested that he be evaluated for a referral to the drug court session of the District Court Department. That judge ordered the referral process to commence, but stated that the final decision would be left to the sentencing judge.
 

 A hearing before the sentencing judge took place on January 4, 2017. The defendant was represented by counsel. The probation officer indicated that according to a police report the defendant was observed "shooting up heroin outside of a ... department store" and that "[n]o charges were brought upon [the defendant] at that time." The probation officer recommended that the defendant's probation be revoked and he be committed to the house of correction for one year. Defense counsel argued that since the hearing on November 1, 2016, the defendant had participated in the Level III program with the OCC, was employed, was performing community service, and had remained drug free until the incident in December, 2016. Defense counsel also stated that the defendant had been brought before the drug court and that he "would probable-most likely [be] welcome[d] ... into the drug court," but that no final decision had been made out of deference to the sentencing judge who was to make the final decision. Defense counsel concluded his argument as follows: "My argument, Your Honor, is pretty clear. He's able to do all the conditions that he's told to do, but he can't help himself because he's a drug addict. That's the whole point behind the drug court, is to take people of his lengthy background of drug use." The sentencing judge interrupted defense counsel to inquire whether the defendant had previously served a sentence of two and one-half years for "possession to distribute." Defense counsel responded: "Exactly, Your Honor, my point. Exactly my point. His extended period of drug use, the charges that are significant to drug use and drug dependence have now elevated him to at least a position where, perhaps, we could stop all of this, get him into drug court and see if they can get a chance to actively work with him, Your Honor." The sentencing judge rejected the drug court alternative and ordered that the defendant to be committed to the house of correction for eighteen months.
 

 Discussion
 
 . The principal question presented by this appeal is whether the defendant made a valid waiver of his right to counsel and his right to a hearing when he appeared before the sentencing judge on November 1, 2016. It is settled that the defendant has the right to counsel at a probation violation hearing. See Rule 5(c) of the District/Municipal Courts Rules for Probation Violation Proceedings, Mass. Rules of Court, at 643 (Thomson Reuters 2017) ("The probationer shall be entitled to counsel"). See also
 
 Commonwealth
 
 v.
 
 Pena
 
 ,
 
 462 Mass. 183
 
 , 191 (2012). "Because the right to the assistance of counsel is essential to individual liberty and security, ... [a] waiver must be voluntary and must involve an informed and intentional relinquishment of a known right. The judge must ensure by careful inquiry on the record that the waiver is made with a sense of the magnitude of the undertaking and the disadvantages of self-representation."
 
 Commonwealth
 
 v.
 
 Means
 
 ,
 
 454 Mass. 81
 
 , 89 (2009) (quotation omitted). In the present case, the defendant was facing the potential risk of incarceration for a period of two years. See G. L. c. 94C, § 34.
 

 Here, as in
 
 Commonwealth
 
 v.
 
 Mullen
 
 ,
 
 72 Mass. App. Ct. 136
 
 , 141 (2008), the record indicates that the sentencing judge "made no inquiry of the defendant, nor did [he] provide him with any information." There was no colloquy as required by S.J.C. Rule 3:10, as amended,
 
 416 Mass. 1306
 
 (1993), which governs waivers of the right to counsel. Instead, after directing the defendant to sign the waiver of counsel form, the sentencing judge simply asked the defendant if he had any questions about his waiver of the right to counsel or his right to a hearing. After informing the defendant that counsel could be appointed for him if he was indigent, the sentencing judge made a finding that the defendant had knowingly and voluntarily waived his right to counsel. Although there is no specific series of questions that a judge must ask to establish an adequate basis for a finding that the defendant made a knowing and voluntary waiver of the right to counsel, see
 
 Commonwealth
 
 v.
 
 Barnes
 
 ,
 
 399 Mass. 385
 
 , 390 (1987), in the present case the inquiry by the sentencing judge was woefully inadequate.
 

 The Commonwealth's argument that the sentencing judge could consider the defendant's prior experience with the criminal justice system and that he was represented by counsel on a prior occasion is not a substitute for a "meaningful inquiry" into the advantages of counsel and the risks associated with self-representation.
 
 Commonwealth
 
 v.
 
 Mott
 
 ,
 
 2 Mass. App. Ct. 47
 
 , 52 (1974). We are left with a record that does not permit a reviewing court to have confidence that the defendant had a "subjective understanding of his decision and its consequences."
 
 Barnes
 
 ,
 
 399 Mass. at 391
 
 .
 

 For the same reason, the record before us is also insufficient to support the sentencing judge's finding that the defendant made a knowing and voluntary waiver of his right to a hearing in connection with the notice of probation violation. See
 
 Commonwealth
 
 v.
 
 Sayyid
 
 ,
 
 86 Mass. App. Ct. 479
 
 , 489 (2014). "It is understandable that in the hurly-burly of our increasingly busy District Courts a premium is placed on the prompt disposition of cases. Yet it is precisely in such an environment that we must ensure that important things are done right."
 
 Commonwealth
 
 v.
 
 Hilaire
 
 ,
 
 51 Mass. App. Ct. 818
 
 , 824 (2001).
 
 [2]
 

 Conclusion
 
 . The order revoking the defendant's probation is vacated and the case is remanded for further proceedings consistent with this memorandum and order.
 

 So ordered
 
 .
 

 Vacated and remanded.
 

 We add this final note about the defendant's argument that the sentencing judge abused his discretion in electing to revoke his probation and impose a sentence of incarceration on January 4, 2017, after acknowledging that as far back as November 1, 2016, the defendant had a longstanding problem with drugs. It is not within our power to review a lawful sentence. See, e.g.,
 
 Commonwealth
 
 v.
 
 Derouin
 
 ,
 
 31 Mass. App. Ct. 969
 
 (1992), and cases cited. Nevertheless, we believe notice should be taken of the "important and special role of the drug court in achieving important public policy interests."
 
 Deputy Chief Counsel for the Pub. Defender Div. of the Comm. for Pub. Counsel Servs
 
 . v.
 
 Acting First Justice of the Lowell Div. of the Dist. Ct. Dept
 
 .,
 
 477 Mass. 178
 
 , 187 (2017). The Massachusetts Trial Court has expanded the number of drug courts and encourages judges to recommend appropriate defendants to be screened for participation in such programs. See Arrowood, "Racing in the Right Direction:" Specialty Courts in Massachusetts, 60 Boston Bar J. 1 (Spring 2016) ; Ellis, Drug Courts Impact Participants, Courts, and Communities, 59 Boston Bar J. 12 (Winter 2015) ; Sullivan, The Development and Implementation of Specialty Courts in Massachusetts, 59 Boston Bar J. 9 (Winter 2015). See also Latessa & Reitler, What Works in Reducing Recidivism and How Does It Relate to Drug Courts?,
 
 41 Ohio N.U. L. Rev. 757
 
 , 775 (2015) (Well-designed drug courts produce a statistically significantly greater reduction in recidivism than incarceration).