NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-552

COMMONWEALTH

vs.

RUBEN ALFONSO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in District Court the defendant was convicted of reckless operation of a motor vehicle (G. L. c. 90, § 24 [2] [a]), leaving the scene of property damage (G. L. c. 90, § 24 [2] [a]), and assault by means of a dangerous weapon (G. L. c. 265, § 15B [b]). The judge held the sentencing hearing approximately one month later, at which the defendant, at his request, represented himself pro se, and the judge allowed the defendant's trial counsel to withdraw. The defendant was ultimately sentenced to three years of incarceration.

On appeal, the defendant argues that aspects of the prosecutor's closing argument resulted in a substantial risk of a miscarriage of justice, primarily contending that the prosecutor improperly defined the concept of "beyond a

reasonable doubt."  He also argues that the judge erred in failing to ensure that the defendant knowingly and voluntarily waived his right to counsel at sentencing.  We affirm.

Background.  We summarize the facts the jury could have found, reserving some details for later discussion.

On October 25, 2020, the sixteen year old victim was returning from Haverhill, Massachusetts, to his home in Manchester, New Hampshire, when he encountered a road closure in Methuen.  The victim parked on a side street to check his global positioning system (GPS) device and try to find an alternative route home, and noticed a group gathered by a nearby vehicle, which the victim described as a maroon Honda CRV (maroon car).  A man from the group approached the victim's vehicle, which prompted the victim to drive away.  A few minutes later, while the victim was stopped at another location, the maroon car approached the victim from the rear and then parked in front of his vehicle.  The victim drove off, but the maroon car followed.  The maroon car eventually hit the victim's driver's side door, and both vehicles came to a stop.  The victim then saw the driver of the maroon car get out of the vehicle, and observed that it was the same man who had approached his vehicle earlier, and that the man appeared to be reaching for something.  The victim, feeling threatened, sped off.  The maroon car followed the victim into the parking lot of a nearby business, where the

2

maroon car crashed into the back of the victim's vehicle before driving away.

The victim flagged down a nearby State police trooper, who contacted the Methuen Police Department. After arriving on the scene, a Methuen police officer walked the parking lot with the victim, and found a license plate near where the maroon car had collided with the victim's vehicle. The officer searched the registry of motor vehicles (RMV) database, which returned that the license plate was registered to a red sport utility vehicle (SUV) owned by the defendant, Ruben Alfonso.[1] A few days later, another Methuen police officer conducted a photograph array with the victim. The victim picked out the defendant's photograph as the individual he had encountered, indicating at one point that the picture was the "perfect image" of the individual. However, during this same meeting the victim also stated that he was only fifty percent sure that the picture depicted the perpetrator.

At trial, the Commonwealth presented the above facts through testimony of the victim, the two Methuen police officers, and the State trooper, as well as video evidence from the police car and police body cameras. In closing, the

---

[1] We note that although the victim described the vehicle as a maroon Honda CRV, the RMV documentation indicates that the defendant's vehicle was a red Mazda CX9. Neither party has addressed this discrepancy, and it has no bearing on our analysis.

prosecutor argued that the evidence proved beyond a reasonable doubt that it was the defendant who had crashed into the victim's vehicle.  Specifically, the prosecutor argued:

> "You have [the victim]'s identification of the defendant through this photo array.  And, I would suggest to you that [the victim] didn't really say that he was 100 percent certain. . . .

> "But you don't just have his 50 percent.  You have the other 50 percent that gets you to 100 percent.  That gets you beyond a reasonable doubt in this case.  And, that's the fact of this title from the RMV.  You're going to see with this document that the registration of the car, the license plate right here is registered to [the defendant].  That's the 50, this is the other 50.  We're at a 100 here."

The defendant did not object to this argument.  The jury found the defendant guilty of reckless operation of a motor vehicle, leaving the scene of property damage, and assault with a dangerous weapon, and the matter was continued for sentencing.

Prior to the sentencing hearing the defendant wrote a letter to the trial court criticizing his counsel's "poor representation" at trial.  Defense counsel became aware of the letter on or shortly before the date for sentencing, and, after conferring with his client, sought to withdraw his representation at the sentencing hearing.  Counsel also advised the judge that the defendant had indicated that he was "willing to represent himself at sentencing."  The judge then inquired of the defendant, who confirmed that he did not want trial counsel to represent him at the sentencing hearing and that he was

4

"sure" he wanted to represent himself.  The judge advised the defendant that he could consult a different attorney, and also offered the defendant additional time to prepare before beginning the hearing.  The defendant declined both offers.[2]  The judge allowed counsel's motion to withdraw, and, after hearing from the Commonwealth and the defendant,[3] advised that the defendant would be sentenced to two years of incarceration, followed by eighteen months of probation.

Before formally imposing that sentence, however, the judge addressed a separate larceny charge involving the defendant, as to which the defendant was represented by the same attorney.  As to the separate larceny charge, the defendant expressed his desire to plead guilty, and to proceed pro se on that charge as well.  Once again, the defendant declined the judge's offer to consult another attorney in connection with that decision.  As to the larceny charge, the judge then conducted a colloquy with the defendant before accepting his plea, inquiring about the defendant's state of mind, his right to an attorney, and his

---

[2] The defendant also signed a waiver of counsel form in connection with his decision to proceed pro se at sentencing, but the record is unclear as to precisely when the defendant did so.

[3] In addition to hearing from the defendant, the judge had before her a sentencing memorandum filed by defense counsel before he withdrew from the case.

5

desire to proceed without one.  Among other things, that colloquy included the following exchange:

Q.:  "Now, sir, you do understand that you have an absolute right to have an attorney, and I can appoint an attorney to represent you here today.  You understand that?"

A.:  "I completely understand, and I receive [sic]."

Q.:  "And, you do not want to have an attorney?"

A.:  "No, I don't want an attorney."

Q.:  "And, sir, do you understand that it would be helpful to have an attorney, because they're familiar obviously with the law and the legal rulings.  But you essentially would be expected to act like your own attorney, even though you wouldn't have had the benefit of having gone to law school?"

A.:  "Yes, I do understand that."

The judge also asked the defendant whether anyone was "forcing," "threatening" or "promising" him anything to forgo those rights, which the defendant answered in the negative.

After accepting the defendant's plea, and having the defendant sign a tender of plea form, the judge sentenced the defendant on the larceny charge, and also on the charges for reckless operation of a motor vehicle, leaving the scene of property damage, and assault with a dangerous weapon.  As to the larceny charge, the judge sentenced the defendant to one year of incarceration.  On the motor vehicle charges, there was additional discussion in which the defendant requested to "just do the time" in lieu of any period of probation.  He said he

6

would not "accept the restitution" and that he would "violate." He added, "I'll do time for that." The judge then amended the sentence she initially had indicated, and instead imposed a total of three years of incarceration with no probation. This appeal followed.

Discussion. 1. Closing argument. The defendant first challenges aspects of the prosecutor's closing argument as improper, primarily contending that the prosecutor incorrectly redefined the reasonable doubt standard by reducing it to a mathematical equation. Because the defendant did not object, we review for a substantial risk of a miscarriage of justice. Commonwealth v. Jones, 471 Mass. 138, 148 (2015).

As an initial matter, to the extent the defendant suggests that prosecutors must refrain from any discussion of the reasonable doubt standard, we disagree. In Commonwealth v. Lester, 486 Mass. 239 (2020), for example, the Supreme Judicial Court found no error in a prosecutor's closing argument that discussed the beyond a reasonable doubt standard, in which the prosecutor noted that it was "not proof beyond all doubt," and that it was incapable of being "measure[d]." Id. at 250 & n.26. The court reasoned that the prosecutor's references to the standard were not incorrect, and thus not improper. See id. at 250. Other cases similarly hold that mere references to the reasonable doubt standard do not constitute error. See, e.g.,

7

Commonwealth v. Cook, 419 Mass. 192, 203 (1994) (not improper to argue to jury that they should "not be intimidated by the phrase 'beyond a reasonable doubt'"); Commonwealth v. Atkins, 386 Mass. 593, 602 (1982).

It is nonetheless true that prosecutors should not attempt to redefine reasonable doubt, nor should they reduce it to a mathematical equation. See, e.g., Commonwealth v. Ferreira, 460 Mass. 781, 788 (2011) (error to mathematically quantify beyond a reasonable doubt standard); Commonwealth v. Snow, 30 Mass. App. Ct. 443, 447 (1991) ("prosecutor should not have attempted an explanation of reasonable doubt"). But the prosecutor here did neither. True, the prosecutor referenced percentages in her argument, but she did not commit the error of "equat[ing] reasonable doubt to a percentage." Commonwealth v. Santana, 477 Mass. 610, 628 (2017). The prosecutor did not say or suggest, for example, that the jury could convict the defendant on ninety-eight percent assuredness. Contrast Ferreira, supra at 787. Instead, the prosecutor described the two key pieces of evidence -- the victim's identification of the defendant and the license plate found in the parking lot -- and argued why that evidence taken together proved the defendant's guilt beyond a reasonable doubt. While not ideally phrased, the argument was not improper. See Commonwealth v. Quigley, 391 Mass. 461, 464 (1984), cert. denied, 471 U.S. 1115 (1985) ("permissible" to

8

argue that prosecutor has met "burden of proof by producing sufficient evidence of guilt beyond a reasonable doubt").

2. Sentencing hearing. The defendant next challenges the judge's waiver of counsel colloquy, primarily contending that it was constitutionally inadequate because the judge did not sufficiently ensure that the defendant's waiver was knowing and intelligent. The defendant also argues that the judge did not comply with S.J.C. Rule 3:10, § 3, as appearing in 475 Mass. 1301 (2016), because the judge did not (1) make written findings that the defendant was "competent to waive counsel and that [he] knowingly and voluntarily elected to proceed without counsel," or (2) "certify in writing that the [defendant] executed the waiver in the judge's presence."

"[W]e review claims of violations of the right to counsel de novo." Commonwealth v. Means, 454 Mass. 81, 88 (2009). Although the right to counsel at all critical stages of criminal proceedings is fundamental, "[c]riminal defendants may voluntarily . . . proceed without a lawyer." Id. at 89. Indeed, it is their constitutional right to do so. See Commonwealth v. Martin, 425 Mass. 718, 720-721 (1997) ("United States Constitution and the Massachusetts Constitution protect a defendant's right to proceed pro se"). A criminal defendant may therefore waive counsel by "affirmative request"; to be effective, however, the waiver "'must be voluntary' and must

9

involve 'an informed and intentional relinquishment of a known right'" (citation omitted). Means, supra. The inquiry focuses on "the defendant's subjective understanding of his decision and its consequences." Commonwealth v. Barnes, 399 Mass. 385, 391 (1987). "We have not prescribed the questions that a judge must pose to an accused who desires to represent himself nor is there any 'particular piece of information that is essential to an effective waiver of counsel.'" Id. at 390, quoting Maynard v. Meachum, 545 F.2d 273, 279 (1st Cir. 1976). At bottom, "[w]e must be confident that the defendant was 'adequately aware of the seriousness of the charges, the magnitude of his undertaking, the availability of advisory counsel, and the disadvantages of self-representation'" (citations omitted). Martin, supra at 720.

Here, the judge's colloquy, in toto, established that the defendant knowingly and voluntarily waived counsel for his sentencing. Before the judge allowed the defendant to proceed pro se, the judge ensured that the defendant understood that he was on for sentencing, provided the defendant the opportunity to consult with another attorney, and offered him time to prepare before beginning the hearing. The defendant nonetheless represented that he was "sure" he wanted to represent himself, and declined to consult with different counsel or to take additional time to prepare. Moreover, before the defendant was

formally sentenced on the motor vehicle charges, the judge engaged in a waiver colloquy involving another criminal complaint wherein the judge (1) advised the defendant of his right to an attorney,[4] (2) explained why an attorney would be helpful, and (3) inquired into the defendant's state of mind, including whether the defendant's decision was made free of coercion.  The defendant represented that he understood his rights and what he was giving up by proceeding pro se, and gave the judge no indication that his decision was anything other than knowing and voluntary.  See Commonwealth v. Pamplona, 58 Mass. App. Ct. 239, 242 (2003) (no error where "defendant repeatedly rebuffed the judge's offer for counsel").  We are accordingly satisfied that the defendant "subjective[ly] underst[ood]" both "his decision and its consequences."  Barnes, 399 Mass at 391.

Supporting this conclusion is that the defendant signed a waiver of counsel form, representing that he had been informed of his right to an attorney and that he had decided to waive that right.  While that form was not strictly compliant with

---

[4] The defendant contends that he was not advised of rights other than his right to an attorney.  We note that it is unclear what other rights the defendant contends he should have been informed of at the sentencing stage; the defendant had already had a jury trial, at which he was represented by counsel.  Moreover, the defendant was afforded his right to appear and to be heard at his sentencing hearing, and he also had the benefit of a sentencing memorandum filed by counsel before counsel withdrew.

11

S.J.C. Rule 3:10, § 3, because the judge made no written findings and did not certify that the defendant executed the form in her presence, this "is not conclusive of a lack of waiver." Pamplona, 58 Mass. App. Ct. at 243. See Commonwealth v. Haltiwanger, 99 Mass. App. Ct. 543, 557 (2021) ("we have held that failure to make a written finding of competency, or to certify the defendant's waiver, is not necessarily conclusive of a lack of valid waiver"). "The absence of a written counsel waiver does not alone require reversal, provided there is sufficient other evidence in the record to demonstrate that the waiver was voluntary and intelligent." Commonwealth v. Leonardi, 76 Mass. App. Ct. 271, 277 (2010). Here, as indicated supra, the record reveals evidence sufficient to establish that the defendant's waiver was knowing and voluntary, especially considering the defendant's firm and repeated rejections of offers to consult with counsel. See Commonwealth v. Najjar, 96 Mass. App. Ct. 569, 581 (2019) (waiver effective despite lack of

signed form, in light of informative colloquy and defendant's "unequivocal responses").[5]

Judgments affirmed.

By the Court (Henry, Desmond & Englander, JJ.[6]),

Joseph F. Stanton

Clerk

Entered:  July 13, 2023.

---

[5] "Other points, relied on by the defendant[] but not discussed in this opinion, have not been overlooked.  We find nothing in them that requires discussion."  Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[6] The panelists are listed in order of seniority.